# Detroit Daily Post Company v. Donald McArthur, and
# Daily Free Press Company v. Donald McArthur.

*Damages in discretion of jury: Duty of court.* While those damages which depend on the sound discretion of a jury are not susceptible of any accurate regulation by the court, yet the jury should be prevented by proper caution from acting upon improper theories as to the legitimate elements to be considered in estimating them.

*Exemplary damages.* The term "exemplary or vindictive damages" should not be used without such explanation as may prevent a jury from being misled by it. For voluntary wrongs additional damages are allowed for injured feeling, which must naturally be aggravated or mitigated by the degree of malice actually existing, but nothing beyond the individual grievance should be taken into the account in estimating them.

If different agencies have concurred in producing a private grievance, the liability of each person for such portion of the damages as is allowed for injured feeling, should be measured by the extent of his own misconduct.

*Publishers of Newspapers: Libel: Damages.* While the mischief which may be caused by an abuse of the press is such as to render its conductors responsible for great care in guarding against the danger, yet the necessities of civilization require that no unreasonable or vexatious restrictions shall be imposed upon them.

The character and doings of private persons, not developed in legal proceedings or voluntarily made public, can not be properly discussed in print; and for all libels every publisher, whether an individual or a corporation, is responsible to the extent of any special damages, and any estimated damage to credit and reputation. But he is only liable for such damages to injured feeling as must inevitably be inferred from the libel itself, published in a paper of such character and circulation as his, if he has used such precautions as he reasonably could, to prevent such an abuse of his columns.

*Publishers of Newspapers, duty of: Express malice of employees: Damages.* The employment of competent editors, the supervision by proper persons of all that is to be inserted, and the establishment and habitual enforcement of such rules as would probably exclude improper items, should exempt a publisher from any aggravation of damages on account of the express malice of his subordinates, for any libel published without his privity or approval.

But if it should appear that he was wanting in reasonable care to prevent abuses, he would be liable to increased damages for his own misconduct, which might fairly be regarded as identifying him with facts which he took no pains to suppress.

*Heard April 9th and 10th. Decided April 14th.*

Error to Wayne Circuit.

This was an action to recover damages for the publication, by defendants, in their newspaper in Detroit, of an alleged libel, concerning plaintiff.

The plea was the general issue, with notice of justification.

The defendants requested the court to charge the jury that punitive or exemplary damages could not be received against them; they being a corporation.

The court refused so to do, but did charge the jury that if the defendants published the libel maliciously, or recklessly, that they were at liberty to give exemplary damages, with reference to all the circumstances of the case.

The jury gave a verdict for $550, against defendants, in both cases.

*Wm. P. Wells, G. V. N. Lothrop,* and *Wm. Gray,* for plaintiffs in error.

1. Vindictive, or exemplary damages are given, when permitted at all, as punishment for malicious intent. There must be, however, actual malice, as distinguished from mere legal malice.— *Sedgwick on Damages,* 38; *Id.* ( *appendix* ) 666; 13 *Howard,* 371; 3 *Johns.* 56; 4 *Duer,* 247.

The inquiry in this case, then, is, can exemplary damages be given for an injury inflicted by the malicious act of an agent of the corporation, when that which is malicious in the act has not been directly authorized, participated in, ratified, or approved by the corporation itself?

2. If the rule of exemplary damages rests upon the idea of punishment, that punishment should be inflicted only upon the person guilty of that which is deserving of punishment. Persons who inflict injuries, or commit crimes, are subject to the appropriate penalties, but these penalties are to be borne by the actors themselves.

The question whether the punishment which is involved in exemplary damages should fall upon any other than the persons guilty of punishment, can only arise, in civil actions, in cases where there has been some relation of principal and agent. And in this class of cases the authorities do not sustain the application of the principle.— 2 *R. I.* 88;

10 *Wis.* 388; 11 *La. Ann.* 192; 3 *Wheat.* 546; 20 *Ill.* 251; 31 *Miss.* 156; 36 *N. H.* 1; 4 *Green,* (*Iowa*) 555.

3. It is necessary to consider the cases at bar in the light of the particular rules which govern the liabilities of corporations, and the damages which may be recovered against them; and there are some considerations which are peculiar to the cases at bar, as being actions against corporations publishing newspapers.

The rules which formerly governed the liability of principals for the acts of agents, have received, unquestionably, some modifications from the growth of modern corporations. Thus, the rule that an individual principal could not be held liable for the willful wrong of an agent, has yielded to the policy which demands that *carrier corporations* should be held to the strictest responsibility.

But all the rules which govern the mere liability of corporate principals for the acts of their agents, are left untouched by the argument which we present. We might even concede that the protection of society and individuals requires that corporations should, in all cases, be held liable for the torts of their agents, and the position that the corporations should not be visited with exemplary damages, is left unassailed.

Our objection is to extending the rule of exemplary damages to corporation principals for the malicious acts of their agents, and especially to the extension of the rule to cases where a publishing corporation is sued for a libel written by an agent and published under the circumstances which appear in the cases at bar.

Our position is sustained by the case of *Philadelphia, W. and B. R. R. Co. v. Quigley,* 21 *How.* 202.

4. If these positions are correct, the charge of the judge of the Circuit Court was incorrect upon the question of malice.

*Ward & Palmer,* for defendant in error.

1. The law is well settled that if the words published in the libel are in themselves actionable, malicious intent in

publishing them is an inference of law, and, therefore, needs no proof.— 2 *Greenl. Ev.* 418; 3 *Phil. on Ev.* 559. By presumption of law, then, the defendants below maliciously published the article in question, and it is for them affirmatively to show that no such malice existed.

Malice in a civil action is well defined in 43 *Me.* 287.

In attempting to overcome this presumption of malice, they did not attempt to justify the publication on account of the truthfulness of the article, but by their pleadings admitted the publication to be false. They simply insisted that the rule of implied malice did not apply in this case, for they, being a corporation, were incapable of malice, and hence, nothing but nominal damages could be recovered against them.

It can not be questioned that, if any corporation is liable in an action of tort for punitive or exemplary damages, a corporation, organized for the publication and circulation of a public newspaper, would be thus liable for damages they may do to private persons, by publishing and circulating false and malicious libels of and concerning them.

Corporations are civilly responsible in their corporate capacity for all torts which work injury to others, whether acts of omission or commission, for negligence merely, or for direct violence, and that, too, in punitive or vindictive damages.— 22 *Conn.* 531, *and cases therein cited*; 10 *Id.* 384; 29 *Id.* 496; 10 *N. H.* 130; *Sedgw. on Dam.* 477, *and note*; 21 *How.* 202; 10 *C. B.* ( *N. S.*) 28; 3 *Met.* ( *Ky.*) 311; 36 *Miss.* ( 7 *Geo.*) 660, *and cases therein cited*; 36 *N. H.* 9; 31 *Miss.* ( 2 *Geo.*) 196; 9 *Minn.* 135.

Thus, it will be seen by the authorities that the court did not err in refusing to charge the jury " that punitive or exemplary damages could not be recovered against the defendants, they being a corporation."

And since a corporation can not be prosecuted criminally, the rule that gives damages to punish the offender, may, with great propriety, be applied, because it is the only mode

in which, by public example, the various rights in community, to personal security, and private property, can, under the sanction of the law, be protected from injury and outrage.

CAMPBELL J.

These cases come up on the same questions, the action below in each of them being for libel, and the charge in each having been identical in all its legal bearings.

The errors alleged refer to the rule of damages, which it is claimed was so laid down as to subject plaintiffs in error to be charged with exemplary damages; and this, they insist, was not authorized as the case stood before the court and jury. Their corporate character is relied on, among other things, as modifying and limiting their responsibility. It is not urged that a printing and publishing company, engaged in the issuing of a newspaper, and established for that purpose, is not responsible to all persons injured by the publication of a libel. But it is claimed that those damages which are enhanced by the misconduct of individual agents of the company, stand on a different footing from those which might be recovered against the individual chiefly active in originating the slanderous article; and that, in submitting the case to the jury, sufficient care was not taken to discriminate.

It is not easy to lay down very definite rules for discriminating damages in those cases where they depend upon the sound discretion of a jury. And yet it is necessary to prevent the jury, as far as may be, from acting upon improper theories of what should be regarded in estimating the elements which go to make up the injury to be redressed. When their attention has been carefully directed, their conclusions must be accepted, unless so perverse or mistaken as to be entirely inconsistent with justice.

The law favors the freedom of the press, so long as it does not interfere with private reputation, or other rights

entitled to protection. And, inasmuch as the newspaper press is one of the necessities of civilization, the conditions under which it is required to be conducted should not be unreasonable or vexatious. But the reading public are not entitled to discussions in print upon the character or doings of private persons, except as developed in legal tribunals, or voluntarily subjected to public scrutiny. And, since an injurious statement inserted in a popular journal does more harm to the person slandered than can possibly be wrought by any other species of publicity, the care required of such journals must be such as to reduce the risk of having such libels creep into their columns, to the lowest degree which reasonable foresight can assure.

The danger, and the precautions necessary to prevent it, are directly connected with the business itself; and all who voluntarily assume the responsibility must exercise it under similar conditions. It is the right of the citizen to be secure against all unlawful assaults; and no distinction can be reasonable which allows the care required in the conduct of any avocation, attended by risks to third persons, to be varied by the private or corporate character of its conductors. Any injury which is avoidable by the perpetrator — or, in other words, any injury which is not in some degree accidental — entitles the injured party to redress. And any damage to person or reputation is recoverable, to such extent as in the opinion of a jury, not led away by passion or prejudice, the nature of the injury will warrant.

But in all cases where an act is done which from its very nature must be expected to result in mischief, or where there is negligence so great as to indicate a reckless disregard of the rights or safety of others, a new element of damages is allowed to be considered. A serious wrong which is the natural and direct result of voluntary action, necessarily indicates a voluntary wrong doer, for the law rigidly holds all persons to the presumption that they intend such results as are to be expected from their conduct,

whenever those results arrive. Where the wrong done consists in a libel—which can never be accidental—the publishing is therefore always imputed to a wrong motive, and that motive is called malicious. And, in the absence of any testimony showing the origin and circumstances of the publication, it stands before the jury as a voluntary wrong, until palliated or excused, while the actual motive, whether intensifying or mitigating the moral guilt, may be shown to qualify it.

If evil motives arising out of ill will or revenge are shown, the moral guilt of the perpetrator will be very much enhanced. If such motives are negatived, the evil quality of the act will in like manner be reduced, and it will appear to all persons much less reprehensible.

It is in connection with the various degrees of blameworthiness chargeable on wrong doers, that the discussions have arisen upon the subject of vindictive or exemplary damages, which, inasmuch as they rest upon actual fault, are by some authorities said to be designed to punish the wrong intent, while, according to others the damages usually so called are only meant to recompense the sense of injury which is in human experience always aggravated or lessened in proportion to the degree of perversity exhibited by the offender. While the term exemplary or vindictive damages has become so fixed in the law that it may be difficult to get rid of it, yet it should not be allowed to be used so as to mislead; and we think the only proper application of damages beyond those to person, property or reputation, is to make reparation for the injury to the feelings of the person injured. This is often the greatest wrong which can be inflicted, and injured pride or affection may, under some circumstances justify very heavy damages. In all libel cases this injury to the feelings is a proper element to be considered, in addition to the damage to reputation and other attendant grievances. And on the same principle anything having a tendency to reduce the extent of the

voluntary wrong is to be considered in mitigation, by the
jury. The injury to the feelings is only allowed to be con-
sidered in those torts which consist of some voluntary act,
or very gross neglect, and practically depends very closely
on the degree of fault evinced by all the circumstances. It
has been very wisely left to the jury to determine each case
upon its own surroundings, because the only safe rule of dam-
ages in matters of feeling is to give what to the ordinary
apprehension of impartial men would seem proportionate to
an injury which must be measured by the instincts of our
common humanity. And it will at once be perceived that
where different persons or agencies have concurred in pro-
ducing an injurious result, although all may be responsible
for some damages for injured feeling, as well as for the
more substantial mischiefs of another sort, yet they may
stand in very different positions of moral wrong.

There is no doubt of the duty of every publisher to see
at all hazards that no libel appears in his paper. Every
publisher is, therefore, liable, not only for the estimated
damages to credit and reputation, and such special damages
as may appear, but also for such damages on account of
injured feeling as must unavoidably be inferred from such
a libel, published in a paper of such a position and circula-
tion. But no further damages than these should be given,
if he has taken such precautions as he reasonably could to
prevent such an abuse of his columns. When it appears
that the mischief has been done in spite of precautions, he
ought to have all the allowance in his favor which such
carefulness would justify, in mitigation of that portion of
the damages which is awarded on account of injured feelings.

The employment of competent editors, the supervision by
proper persons of all that is to be inserted, and the estab-
lishment and habitual enforcement of such rules as would
probably exclude improper items, would reduce the blame-
worthiness of a publisher to a minimum, for any libel in-
serted without his privity or approval, and should confine

his liability to such damages as include no redress for wounded feeling, beyond what is inevitable from the nature of the libel.    And no amount of express malice in his employees should aggravate damages against him, when he has thus purged himself from active blame.

If, on the other hand, it should appear from the frequent recurrence of similar libels, or from other proof tending to show a want of solicitude for the proper conduct of his paper, that the publisher was reckless of consequences, then he would be liable to increased damages, simply because by his own fault he had deserved them.    By such recklessness he encourages fault or carelessness in his agents, and becomes in a manner in complicity with their misconduct.

While, therefore, in the present case, the reporters were guilty of carelessness in receiving hearsay talk of legal charges which could only be lawfully published if in accordance with the documentary facts, and while there could be no justification for publishing outside scandal against an individual, from any source whatever, yet the defendants were only responsible, beyond the damages recoverable under any circumstances for such a libel, to the extent of their own conduct, in the care or want of care used in guarding their columns against the insertion of such articles.

We have no means of judging whether the verdict of the jury was based upon any idea of the personal fault of the publishers, and we have no authority to pass upon its propriety in either view of the facts.

But there is room for the ground taken by the plaintiffs in error, that the charge of the court left it in the power of the jury to hold them in all respects identified with the faults of their agents.    Upon this ground we think the charge must be regarded as calculated to mislead the jury, and we must therefore award a new trial.

COOLEY CH. J. and GRAVES J. concurred.

CHRISTIANCY J. did not sit.