F. M. HAYS v. THE HOUSTON G. N. R. R. Co.

1. PRACTICE—AMENDMENT.—After both parties to a suit have announced ready for trial, and exceptions to the petition have been overruled, it is in the discretion of the court whether the plaintiff will be permitted to amend, and again give a full statement of his cause of action—such amendment not having been rendered necessary by the ruling of the court.

2. DAMAGES, MEASURE OF.—In a suit against a railroad company for the alleged wrongful act of its conductor in ejecting plaintiff from a passenger car, the jury was in effect charged, that in considering the actual damage sustained by plaintiff, they would estimate the same by the injuries sustained by the plaintiff in his feelings, his person, and his estate ; that they might look to plaintiff's situation in life, his reputation in the community, and any circumstances which might appear from the evidence to have attended the act complained of, but they could not take into account the wealth of defendant or the poverty of the plaintiff: *Held,* That there was no error.

3. CORPORATION—EXEMPLARY DAMAGE.—A corporation, as well as an individual, may be guilty of such " willful act, omission, or gross neglect," as to subject it to exemplary damages, but no more than individuals are they responsible for the malicious acts of their agents. No distinction can be made as to liability for damages inflicted by an agent, whether the master be a natural or an artificial person.

4. CORPORATION—DAMAGES FOR ACTS OF AGENTS.—The actual dam-

ages to which a railroad company must respond, extending as it does to injuries to the feelings, and damage for personal suffering, gives to juries sufficient scope, without allowing exemplary damages, except in cases when the corporation has itself been remiss.

5. EXEMPLARY DAMAGES AGAINST RAILROAD COMPANY, WHEN ALLOWED.—If the malicious act of its agent is ratified and adopted by a railroad company; if there is carelessness in the selection of employees, or in the establishment of appropriate regulations; if, in short, the corporation or other officers by whom it is controlled and represented are guilty of some "fraud, malice, gross negligence or oppression,"—the law will hold the company liable to exemplary damages, but not otherwise.

APPEAL from Smith. Tried below before the Hon. M. H. Bonner.

Suit by Hays against the Houston and Great Northern Railroad Company, to recover damages, claimed by him to be fifty thousand dollars, because of his alleged wrongful expulsion by a railroad conductor from one of the passenger trains of said company, on the 7th day of July, 1873, between Zavalla and the city of Tyler. Appellee denied the allegations of said petition, and pleaded legal justification for the act of his agent. Trial was had, and the jury, after being charged by the court, returned a verdict against the company and in favor of Hays, for one hundred dollars, actual damages, besides costs of suits, &c.; from which judgment Hays took this appeal.

On the 7th July, 1873, Hays was at Troup, and wished to go to Tyler, accompanied by his wife, five children, a nurse, and a lady friend of his family. The testimony shows (except that of Hays) that the regular fare between these points was one dollar for each person over twelve years old, fifty cents for each one between five and twelve, and no charge for children under five. The testimony of Mrs. Hays shows that five of the number were over twelve years, three between five and twelve, and one under five. On the morning of the 7th of July, Hays, with his family and friend, repaired to the depot, where they were invited into the ticket office—Hays

18

was acquainted with the ticket agent—and then went to the ticket window and called for tickets.    Mr. Ferris (the man in the office) inquired, "for all the crowd?"    Hays says, "yes;" and began to enumerate them; but before he had finished, Ferris was called away.    When he returned, Hays told him he had always paid four dollars for his family from there to Tyler, but there was then an additional person with his family. Ferris said he would only charge the same, when Hays told him, he "wished to pay full fare."    Ferris said, ".that is sufficient; you shall go through for that."    Hays then handed him five dollars, and received five tickets, and with his family and friend entered the car and took their seats.    Soon after starting, the conductor came through the car, as usual, collecting tickets, when Hays handed him five tickets.    The conductor took them; and hesitating a moment, said to him, "You will have to pay another fare."    Hays told him he had bought his tickets of the agent at Troup, and that he said they were sufficient.    Conductor told him it was the agent's business to sell tickets, but the conductor's to collect the money; he "would have to pay another fare, or get off at Hill's station."    The conductor then walked off, and shortly afterwards the train stopped at a wood pile.    While there, he again approached appellant, and told him he had come for the other fare; and in reply to Hays's response, "you have?" the conductor told him, yes; and he must pay it, or one of them must be put off.    To this Hays replied, "We will see about that."    After the train started again, the conductor came to him the third·time for the other fare, and asked him if he would pay it, when Hays replied, "no;" and the conductor put him off.

As to the manner of appellant's ejection, there is a conflict of testimony : the plaintiff, his wife, and lady friend testifying that he was pushed against a seat on the opposite side of the aisle, after being raised from his seat by the conductor, while the conductor and engineer say he was taken out by the conductor alone, and put off while the train was.

still—the conductor holding his hand until he stepped on the ground—and that no more force was used than was necessary; and these are corroborated by the mail agent, who was on the train, and a passenger, who was sitting close by and witnessed the transaction. Appellant admitted that he made pretty stout resistance to being put off the train.

The injuries complained of were a bruise on the right thigh and one on the left hip, caused by his catching hold of the iron railing, and the tearing of his breeches. No witness testified to those injuries except himself and wife.

The testimony further shows that Ferris, the person from whom Hays purchased the tickets, was not the ticket agent, and had no authority from the railroad company to sell tickets. He was local freight agent at Troup, but on that morning had been requested by the ticket agent, Parks, to sell tickets for him. Parks was the ticket agent, but had no authority from the company to empower another to sell for him, and this was the only instance in which he had done so. Ferris paid over the money he received from Hays to Parks, but told him of no arrangement he had made with Hays, and Parks forwarded the money to the treasurer of the company, but with no report of the arrangement which Hays says he made with Ferris. The testimony further showed that ticket agents had no authority to pass persons over the road, except at regular fare; and that it was the duty of conductors to put all off the train who had neither tickets or pass, and who refused to pay their regular fare.

*Jones & Henry*, for appellant.—Corporations are liable to vindictive damages for the willful and malicious acts of their servants. (Passenger R. R. Co. *v.* Young, 8 Am. R., 79, 80; Bryant *v.* Rich, Ib., 451, note 456; Higgins *v.* W. T. & R. Co., 7 Am. R., 293; Jackson *v.* 2d Av. R. R. Co., 7 Am. R., 448.)

And the court so charged, but made the right of the plaintiff to recover them depend upon the payment of his fare—

meaning full fare—or on his right to ride free; and charged that, if he was willfully and maliciously ejected at a place which was not a usual stopping place, he would be entitled to recover actual damages only, unless plaintiff had paid full fare or had a right to ride free.

This charge was erroneous, and no doubt controlled the amount of the verdict.

*R. B. Hubbard,* for appellee.—We admit that a conductor or servant of a corporation could only use such necessary force as would be required to effect the expulsion of a passenger, when such passenger was wrongfully on board, not having paid his fare. The question of exemplary or punitive damages, however, can never arise in any case, even when unnecessary force is used in expelling a passenger, provided the passenger is wrongfully on board. In such case, the jury can only consider the amount of actual damages sustained by the party expelled. (Coleman *v.* N. Y. and N. H. R. R. Co., 106 Mass., 160; also 19 Ohio, 157; 53 N. Y., 25; 19 Mich., 205; 47 N. Y., 274; Sandford *v.* Eighth Avenue R. R. Co., 23 N. Y., 343; 7 Bosw., 122; Great Western R. R. Co. *v.* Miller, 19 Mich., 305; Barker *v.* N. Y. Central R. R. Co., 24 N. Y., 599; 22 Barb., 130; Northern R. R. Co. *v.* Page, 33 How. Pr., 327; 26 and 38 Mo.; 37 Cal.; 53 N.Y.; 56 N. Y.; 19 Mich.; 11 Mich., 447.)

*Stephen Reaves* and *Baker & Botts*, also for appellee.

GOULD, ASSOCIATE JUSTICE.—Appellant brought this suit to recover damages for personal injuries received, and the violation of his rights as a passenger, in the alleged malicious, forcible, and wrongful act of defendant, by its agent, the conductor, in ejecting him from the cars. He claimed that he was rightfully on the cars; that the act of the conductor in expelling him was wrongful, was accomplished in a rude and insulting manner, and by personal violence, resulting in injuries to his clothing and bruises to his person, and was

further aggravated by being done in the presence of, and to the great terror of plaintiff's wife and children, and by putting him off in the woods, and not at a usual stopping place. In an amended petition, he alleged that the defendant not only authorized the conductor to commit the grievances complained of, but did, after the commission thereof, ratify, confirm, justify, and adopt said acts.

Exceptions were taken and sustained to so much of the petition as set up the distress of the plaintiff's wife and children, because of his expulsion, and their belief at the time that he was seriously hurt. In addition to the general denial, there was a special answer, alleging that the plaintiff, with his wife, five children, a lady companion, and a servant, entered the cars, on the tacit condition that he would pay, when demanded, the usual rates of fare, of which public notice had been given, and of which he knew, amounting to six dollars, (or tickets;) that when the fare was properly demanded, he presented only five tickets, and refused to pay the additional fare due, asserting that he would pay no more, and that neither he nor any of his company would get off, unless put off by force; and that after repeated demands, the conductor, with the use of no more force than was necessary, and without any malice or oppression, laid hands on him and conducted him off the cars at a usual stopping place. The result of the trial was a verdict and judgment for the plaintiff for $100, actual damages.

The plaintiff moved for a new trial, on the ground that the damages allowed were too small; that the verdict should have been for exemplary damages; that the court erred in refusing instructions asked, and in the charge as given, and in giving in part a verbal preliminary charge, and also in the admission and exclusion of evidence. His motion being overruled, the plaintiff has brought the case here by appeal.

Evidently, the only questions that need be considered are those bearing on the amount of damages, and as it has not been argued here that this court should reverse the case, on the

ground simply that the jury should have allowed larger or vindictive damages, it is only necessary to inquire whether the court committed any error affecting the amount of plaintiff's recovery.

There are nineteen assignments of error, but it is believed that the questions involved are really but few, and may be discussed and disposed of without attempting to follow their assignments. It appears by bill of exceptions, that after the parties had announced themselves ready for trial, and the court proceeded to pass upon defendant's exceptions to the petition, and had overruled the same, except in the particular already stated, that the plaintiff tendered an amended petition, in which he again gave a full statement of his cause of action. The court refused to receive it, because offered too late. It is sufficient to say that it was within the discretion of the court whether it would permit an amendment not rendered necessary by its rulings at that stage of the trial, and that it does not appear that that discretion was abused. But the action of the court, even if erroneous, did not affect the plaintiff injuriously. His pleadings were sufficient to allow evidence of every fact material to the full presentation of his case. The only evidence offered by him and excluded was, as to whether the conductor, when he called for the fare, had on his hat the badge required by the statute. It is not perceived how that fact could, if proved, have increased the amount of damages. For the same reason, it is not material to inquire whether the court erred in its instructions on the subject of what was a usual stopping place, nor, indeed, whether there was any error in the charge, submitting that to the jury as a question of fact, unless it was such as might have misled the jury as to the amount of their verdict. By that verdict, they find that the act of expulsion was wrongful, and they further find what were the actual damages to plaintiff from that wrongful act. So much of the charge as bears only on the right of the plaintiff to be on the cars, and the right of the conductor to eject him, need not

be reviewed. No specific error is pointed out in the assignments of error, or otherwise, in the instructions, as to what might be considered in estimating actual damages. The jury are told to estimate the actual damages by the "injuries sustained by the plaintiff in his person, his estate, and his feelings," and are told that they may look to the plaintiff's " situation in life, his reputation in the community, and any circumstances which may appear from the proof to have attended the (acts) complained of," but not to take into account " the wealth of the defendant or the poverty of the plaintiff." We think that the subject of the amount of actual damages was fairly placed before the jury.

On the subject of exemplary damages, the jury are told, "that in cases of malice, or a wanton disregard of the rights of others, in violation of law, the jury may, in such cases, in addition to actual damages, go further, and, in the exercise of a sound discretion, assess such further damages as they may deem just as a punishment for this malicious intent, or this wanton disregard of the rights of others, and this, with regard to corporations as well as individuals."

The right of the plaintiff to recover exemplary damages, however, is made to depend on the question of whether he was rightfully on the train or not.

That view of the law is stated repeatedly; but the following extract from the charge will suffice to present the views of the presiding judge: "It is a rule of law, that a party seeking legal redress, must show his adversary in the wrong, and must show himself in the right, and that no negligence of his own has tended to increase or consummate the injury. But if the plaintiff was rightfully on the train, by payment of fare, or right to ride free, conferred by proper authority, and the conductor was actuated by a wicked intent to do the plaintiff an injury, or did the act in a spirit of wanton disregard of the plaintiff, and with the use of insulting words, then the jury will be warranted in assessing exemplary damages; other-

wise, in such cases, they will confine themselves to an estimate of the actual damages sustained by the plaintiff."

As we are of the opinion that, under the evidence, the case was not one in which exemplary damages could have been allowed, it does not become necessary to inquire into the correctness of this charge.

In expressing this opinion, we do not mean to say whether, if the conductor himself had been defendant, he might or might not have been so punished. The evidence, as to the nature of his acts, was, to some extent, conflicting, and it is not necessary to pass upon it. What we mean to say is, that there is no evidence that the railroad company was guilty of any such "fraud, malice, gross negligence, or oppression" as to subject it, in addition to actual damages, to exemplary damages, by way of punishment.

That exemplary damages are in the nature of punishment, has long been the recognized doctrine in this State. (Graham v. Roder, 5 Tex., 149.)

Unless a party has been guilty of some "fraud, malice, gross negligence, or oppression," he is not subject to this punishment.

That a corporation, as well as an individual, may be guilty of such "willful act, or omission, or gross neglect," as to subject it to exemplary damages, is, in this State, settled beyond question. (Const. of 1869, art. XII, sec. 30; Const. of 1875, art. XVI, sec. 26.)

Corporations, as well as individuals, may deserve punishment. But no more than individuals, are they to be punished for the malicious acts of their agents. "It is obvious that no distinction can be made as to this liability, whether the master be a natural or an artificial person." (Hamilton v. Third Ave. R. R. Co., 53 N. Y., 29; Phila., W. & B. R. R. Co. v. Quigley, 21 How., 202.)

Unquestionably, the master, whether an individual or a corporation, is liable to the extent of actual damages for the willful trespass of his servant committed in the course of his

employment, even if done against his orders.   The rule "is founded on public policy and convenience."   "In every such case, the principal holds out his agent as competent and fit to be trusted, and thereby, in effect, he warrants his fidelity in all matters within the scope of the agency." (Story on Agency, sec. 452.)

For excessive violence or other wrong committed by the conductor in ejecting a person from the cars, both the conductor and the company are responsible.   But in the language of Justice Campbell, in delivering the opinion of the Supreme Court of Michigan, in a case similar to this, for damages for being ejected from the train, "It does not follow that the responsibility of his employers is the same as his, (the conductor's.)   For those aggravations which may arise out of his wantonness and malice, we have held that the employer is not on the same footing as the agent." (Great Western R. W. Co. v. Miller, 19 Mich., 305.)   The court refers to the case of Detroit Daily Post Co. v. McArthur, 16 Mich., 447, which was an action for libel against a publishing corporation.   In that case, the court say, "There is no doubt of the duty of every publisher to see at all hazards that no libel appears in his paper.   Every publisher is therefore liable, not only for the estimated damages, and such special damages as may appear, but also for such damages on account of injured feeling, as must unavoidably be imposed from such a libel published in a paper of such a position and circulation.   But no further damages than these should be given, if he has taken such precautions as he reasonably could to prevent such an abuse of his columns.   When it appears that the mischief has been done it spite of precautions, he ought to have all the allowance in his favor which such carefulness would justify, in mitigation of that portion of the damages which is awarded on account of injured feelings.   The employment of competent editors, the supervision by proper persons of all that is to be inserted, and the habitual enforcement of such rules as would probably exclude improper items, would reduce

the blameworthiness of a publisher to a minimum for any libel inserted without his privity or approval, and should confine his liability to such damages as include no redress for wounded feeling, beyond what is inevitable from the nature of the libel. And no amount of express malice in his employees should aggravate damages against him when he has thus purged himself from active blame. If, on the other hand, it should appear from the frequent recurrence of similar libels, or from other proof tending to show a want of solicitude for the proper conduct of his paper, that the publisher was reckless of consequences, then he would be liable to increased damages, simply because by his own fault he had deserved them." (16 Mich., 454, 455.)

As we have just seen, the principles here laid down are applied to the expulsion of a party by the conductor from the cars. The opinion has been cited at length, as stating what is believed to be the true doctrine. The distinction taken, as to the extent of the liability of the principal and agent, or employer or employee, is established by other authorities. (The Amiable Nancy, 3 Wheat., 546; Kirksey v. Jones, 7 Md., 622; R. R. Co. v. Finney, 10 Wis., 388.)

In the case of Turner v. North Beach and M. R. W. Co., 34 Cal., 600, which was a suit for damages against the company for expulsion from the cars, the court says: "If her expulsion resulted from the malice of the conductor, or was accompanied by violence and personal indignity, the conductor alone is responsible for such damages as she may be entitled to for this cause, beyond the actual damage resulting from her expulsion from the car, unless, as before stated, the company expressly or tacitly participated in the malice and violent conduct of the conductor."

Justice Story says: "If this were a suit against the original wrongdoers, it might be proper to go yet further, and visit upon them, in the shape of exemplary damages, the proper punishment which belongs to such lawless misconduct. But it is to be considered that this is a suit against the owners of

the privateer, upon whom the law has, from motives of policy, devolved a responsibility for the conduct of the officers and crew employed by them, and yet, from the nature of the service, they can scarcely ever be able to secure to themselves an adequate indemnity in case of loss. They are innocent of the demerit of this transaction, having neither directed it nor countenanced it, nor participated in it in the slightest degree. Under such circumstances, we are of opinion that they are bound to repair all the real injuries and personal wrongs sustained by the libellants; but they are not bound to the extent of vindictive damages." (3 Wheat.)

It is believed that there is no principle which would attach to a railroad company a greater liability for the acts of the conductor than to the owners of a vessel, for the act of the master.

We are aware that cases are to be found which assert that the liability of the railroad is the same in extent as that of its employee. (Atlantic & Great Western Railway Co. *v.* Dunn, 19 Ohio, N. S., 162; Goddard *v.* Grand Trunk Railway, as reported in Redf. Am. R. W. Cases, vol. 2, 502, and cases cited in those opinions.)

In the case from Ohio, the court say, in regard to the question: "We find no settled or decidedly preponderant course of decision upon it. The cases are irreconcilibly conflicting; and the only aid we can derive from them is through the suggestions of legal principles which they contain." The question is certainly not yet settled by authority, and we have been unable to concur in the reasoning, which means, as we think, that the courts have authority, on considerations of public policy, to introduce a new rule as to the extent of the liability of railroad or other corporations for the acts of their employees, differing from the rule recognized in other cases of principal and agent, or employer and employee. If such a modification of the law is desirable, it is our opinion that it should be authorized by legislation.

In fact, however, the actual damages to which the com-

pany must respond, extending as it does to injuries to the feelings, and danger of personal suffering, seems to give to juries sufficient scope, without allowing exemplary damages, except in cases where the corporation has itself been remiss. If the malicious act of its agent is ratified or adopted; if there is carelessness in the selection of employees or in the establishment of appropriate regulations; if, in short, the corporation, or their officers by whom it is controlled and represented, are guilty of some "fraud, malice, gross negligence, or oppression,"—the settled rules of law will hold it liable to exemplary damages, but, in our opinion, not otherwise.

In the case before us, the evidence clearly shows that the plaintiff had not paid his full fare, and that the conductor had authority, and under the rules of the company was required, to eject him. If the jury believed that the conductor used excessive force, or that he put the plaintiff off maliciously, at an improper place, there is nothing whatever to show that the malice of the conductor can be rightfully imputed to the company. There was no averment that the company had been remiss in the selection of a conductor, or in its instructions for his government; nor was there any evidence justifying exemplary damages against the company.

The judgment is therefore affirmed.

AFFIRMED.

Chief Justice ROBERTS did not sit in this case.