Opinion by
White, P. J.
§ 471. Impeachment of witness; contradictory statements; rules as to; case stated. Suit by appellee, a minor, by her next friend, O. C. Woodall, her father, to recover of appellant $1,000 damages for personal injuries,, alleged as follows: “That on about the 16th day of May, 1883, she was standing about fifteen or twenty feet from the track of defendant’s railway, when a freight train, operated by the agents of defendant, passed her; that she and her sister were in plain view of the persons in charge of *414 the engine; that the ground where they stood was some ten feet below the track, and that while standing there, in full view of the employees of defendant in charge of the engine, they carelessly and negligently perverted the appliances of said engine which were charged with steam and boiling water, and thereby threw steam and boiling-hot water on plaintiff and her sister, and did blister, scald and blotch plaintiff’s face, body and legs.”
The damages claimed are for “great bodily pain and suffering, and mental anguish and solicitude, scalding, splotching, blistering and burning plaintiff’s face, body and legs, and putting plaintiff in great fear and fright as to her personal safety.” Defendant answered by general demurrer, special exceptions, general denial, and special plea, that plaintiff was a trespasser on its road-bed. Verdict and judgment for plaintiff for $1,000. The first error complained of by appellant is the refusal of the court to allow V. H. Kilgore, a witness for appellant, to testify to contradictory statements made to him by C. C. Woodall, the party suing as next friend of plaintiff, to those made by said Woodall in his testimony as plaintiff’s witness on the trial. A correct proposition of law is announced by appellant’s comíselas follows: “Awitness can be impeached on any material issue, after laying the proper predicate, by showing- that he has made statements out of court, contradictory of his statements in court.” Disclosing the facts pertinent to the supposed error complained of, bill of exception No. 2 is as follows: “The plaintiff, C. 0. Woodall, was asked on the cross-examination if he did not have a conversation with V. H. Kilgore, attorney for defendant, at Grand Saline on a certain Saturday, the same being justice court day, a short time after the alleged injury, while they were sitting down by the side of the house occupied by J. G. O’Harra as an office, and on the side next to Mrs. Clancy’s boarding house, in which they were talking about Woodall’s getting pay for the injury to his child. He said that he did have such a conversation. He was *415 then, asked if he did not then say, in that conversation, that his child was not much hurt, hut his children were badly frightened, and that the company ought to pay him something for scaring his children. He said that he did not use such language. V, H. Kilgore was then placed on the stand, to prove that the said Woodall did, at the time mentioned, say that his child was not much hurt, but that his children were badly frightened, and that the company ought to pay him something for scaring them; which.was objected to for the want of a proper predicate to impeach the witness Woodall, and because his statement could not bind plaintiff.” Mr. G-reenleaf says: “The credit of a witness may be impeached by proof that he has made statements out of court contrary to what he has testified at the trial, but it is only in such matters as ai’e relevant to the issue that the witness can be contradicted. And before this can be done, it is generally held necessary, in the case of verbal statements,, first to ask him as to the time, place and person involved in the supposed contradiction.” [1 Greenl. Ev. (13th ed.) § 462.] From this rule, we do not understand that, as to time, the exact hour, or even day, must necessarily be stated, but the time may be definitely fixed by other circumstances, with sufficient certainty to put the witness fully upon notice and guard as to the particular transaction or conversation in which the statements were made. The predicate in this instance was properly and sufficiently laid for the introduction of the proof of the alleged contradictory statements of the witness. But in determining whether the court, in excluding the evidence, materially affected the rights of the defendant, we must look to the testimony of the witness 0. C. Woodall, as set out in the statement of facts. Doing this, we do not find any material conflict between his testimony, and his statements out of court, as proposed to be proved, for he nowhere testifies positively that the plaintiff was much or seriously hurt. The alleged contradictory statements, if proved, would not have discredited his testimony, and *416 therefore the refusal to admit them was not material error. [W. & W. Con. Rep. § 1297.]
§ 472. Charge of the court; must be considered as a whole. Objections are strenuously urged to the charge of the court, that it assumed that certain facts were proved and was upon the weight of evidence, wherein the jury were told that “the measure of damages in this case will be the physical pain and suffering, the mental anguish, the peril and fright experienced by the plaintiff.” This paragraph occurs in the preliminary statement as to the nature and character of the action and thé issues in the case. If it stood alone and unqualified, there is no question but that it would be most clearly obnoxious to appellant’s objections. But the rule is well settled, that a charge must be considered as a whole, and not in detached portions, for it is but fair to presume that the jury did not overlook any portion of it, but gave due weight to it as a whole. [W. & W. Con. Rep. § 1017.] And if a paragraph or section which is erroneous is corrected in the subsequent portions in such manner as that the jury could, not probably have been misled by it, the error will be held to have been cured. In a subsequent portion of his charge, the trial judge, when he came to a direct application of the law to the facts, instructed the jury as follows: “In ascertaining the damages sustained by plaintiff, if any have been sustained, you will take into consideration the physical pain and suffering, the mental anguish and suffering, aud the peril and fright, to which plaintiff was subjected, if to any she was subjected.” This clause sufficiently qualified the former, and fully apprised the jury that it was incumbent upon them to find the damages, if any, and to estimate them in connection with certain facts named, if they found the damages and those facts to exist. Neither the damages or facts are assumed, or stated to exist.
§ 473. Principal liable in damages for act of agent, when; rule as to liability of corporations for injuries done by their servants, etc. The sixth error assigned is *417 as follows: “The court erred in refusing to give the following special charge, ashed by the defendant, to wit: That in order for the principal’to be liable for the acts of > this agent, it must be proven that the agent "was acting within the scope of his authority, and the principal is not responsible for the positive and wilful wrongs of the agent; and if from the evidence in this case the jury believe that the injury alleged to have been inflicted on the plaintiff was done or inflicted by the w-ilful, wrongful and malicious act of the engineer, or any other person in charge of said engine, then you will find the Texas & Pacific Railway Company not liable, and you will therefore find for the defendant.” In support of this special instruction, the proposition contended for is, that the principal is not liable for the unauthorized, wilful or malicious acts of his agents. In Hays v. R. R. Co. 46 Tex. 272, it is said by our supreme court, “that a corporation, as well as an individual, may be guilty of such ‘ wilful act or omission, or gross neglect,’ as to subject it to exemplary damages, is, in this state, settled beyond question. [Const. 1869, art. XII, sec. 30; Const. 1875, art. XVI, sec. 26.] Corporations, as well as individuals, may deserve punishment. But no more than individuals are they to be punished for the malicious acts of their agents. It is obvious that no distinction can be made as to this liability, whether the master be a natural or an artificial person. [53 N. Y. 29; 21 How. 202.] Unquestionably, the master, whether an individual or a corporation, is liable to the extent of actual damage for ■ the wilful trespass of his servant, committed in the course' of his employment, even if done against his orders. The' rule is founded on public policy and convenience. In. every such case, the principal holds out his agent as competent and fit to be trusted, and thereby, in effect, he-warrants his fidelity in all matters within the scope of his agency.” [Story on Agency, § 452.]
§ 474. Same; distinction as to liability betiveen actual and exemplary damages. In the same case the distinc *418 tion. as to the liability of a railroad .company between actual and exemplary damages is thus drawn: “ In fact, however, the actual damages to which the company must respond, extending as it does to injury to the feelings and danger of personal suffering, seems to give to juries sufficient scope, without allowing exemplary damages, except in cases where the corporation has itself been remiss. If the malicious act of its agent is ratified or adopted; if there is carelessness in the selection of employees or in the establishment of appropriate regulations; if, in short, the corporation, or its officers by whom it is controlled, are guilty of some ‘fraud, malice, gross negligence or oppression,’ the settled rules of law will hold it liable to exemplary damages, but, in our opinion, not otherwise.” [Hays v. R. R. Co. 46 Tex. 272; Willis & Bro. v. McNeill, 57 Tex. 465; ante, §§ 438-440.]
§ 475. Same; actual damages; liability of principal for. As to actual damages, a railroad, as well as an individual, is responsible for all acts of the agent done •within the scope of his apparent authority. “This is the test,” said Wheeler, J., “by which to determine the liability of the master in all cases like the present. Was he (the servant), at the time he did the act complained of, acting in the course of the service? If so, the master is responsible; but if not, if he had stepped out of the course of the service, the master is not responsible.” [Eccles v. Dodd, 20 Tex. 191.] If the agent be acting within the scope of his employment, then his principal, the corporation, -will be liable for a trespass committed by him, or for an assault and battery, for a libel, for false imprisonment, or for fraud. And it is immaterial in such cases that the servant proceeded without, or contrary to, the express orders of his principal. [2 Thomp. on Neg. 888, 889.] “ The test of the master’s responsibility is not the motive of the servant, but whether that which he did was something his employment contemplated, and something which, if he should do it lawfully, he might do in his employer’s name.” [Cooley on Torts, *419 536.] A case in all its essential features almost identical with the one under consideration is that of the R. R. Co. v. Starnes, 9 Heiskell (Tenn.), 52. The principles of law applicable to the facts are so well and lucidly stated by Judge Sneed that we cannot better express them than in the following copious extract from his able opinion. He says: “It was the established doctrine of the common law that the master is not liable for the torts of the servant not committed in the line of the master’s service, or with his assent or ratification. This doctrine has been greatly modified, as applied to railroad companies, on account of the absolute necessity for more stringent rules for the protection of life and property against the perils of the steam-engine and its capacity for mischief. The corporation, in such case, can only act through its agents and servants, and hawing placed under the control of its agents an instrument of so much peril and injury, it is but reasonable that the law should demand of the corporation the utmost caution in the selection of its agents, and hold it to strict accountability for injuries which befall the citizen for the want of such caution.. It is settled that corporations are liable for torts committed by their agents in discharge of the business of their employment, and within the proper range of such employment. ' [1 Redfield on Railways, 511.] And it is said that the general principle, that the master is not liable for the wilful act of his servant, has no application to railways. [Id.] In regard to them, it seems inadmissible, says the same authority, to excuse them for every act of their servants which is done or claimed to be done wilfully, and which results in injury to" some other party, or proves to be illegal, unless directed or ratified by the corporation. [Id.] As a general rule, the company, as carriers of freight and passengers, are liable for all the acts of their servants; but for the acts of their servants, in regard to strangers, as in this case, it is contended that the company is not liable for the tort of its servant, committed out of the line of his duty and employment. *420 It is said in the authority already cited (Redfield), that by putting its agents in its place, or suffering them to occupy them, the company consent to be bound by their acts; and an engineer or conductor of a railway, while he acts with the instruments which the company places in his hands, to be used on their behalf, upon the line of their road, is acting instead of the corporation, and his acts will bind the corporation, whether done negligently or cautiously, heedlessly or purposely. [Id. 513.]
“A railroad company would not be liable for the tort of its agent, if such agent step aside from the line of his duty, and commits a battery or other tort upon a stranger, or upon his property. But if, in the control of his engine, and while at his post in the line of his employment, he wantonly uses his engine for purposes of sport or malice, to another’s injury, we can see no good reason why the corporation should not be liable, for, in the language of the authority cited, he is acting with the instruments which the company has placed in his hands, to be used in their behalf, upon the line of their road; he is acting instead of the corporation, and his acts will bind it, whether done heedlessly or purposely. The ground upon which the master, at common law, avoided responsibility for the wilful acts of his servant, was, that they were not done in the course of his employment. If they be so done, the master is liable.” [Shear. & Red. Neg. 75.] In R. R. Co. v. Graham, 46 Ind. 239, it is said: “ The agents and servants of a railroad, while engaged in running a train of cars, are in the line of their duty, and for their acts wilfully done, while so engaged, the company is liable.” In Crocker v. R. R. Co. 36 Wis. 657, where a conductor of a train rudely hugged and kissed a female passenger, it was held that the corporation was liable for compensatory damages, and that compensation included not only pecuniary loss, but also mental suffering. [See, also, Gasway v. R. R. Co. 58 Ga. 216.] And so, where a brakeman wilfully dashed a jet of water upon a passenger, who had refused to pay the brakeman *421 for watering the passenger’s hogs, it was held that “a corporation is liable for the wilful acts and torts of its agents, done to the injury of others, within the general scope of their employment, though the particular acts had not been previously authorized, and have not been ratified since by the corporation.” [R. R. Co. v. Jackson, 81 Ind. 19.] Considered in the light of these authorities, we are of the opinion that the act of the engineer in this case was done whilst he was in the employment of the corporation, and that said act was within the scope of his employment. The allegations in the petition do not aver that the act was maliciously, but that it was carelessly, wilfully and negligently done, and under these allegations plaintiff'was not seeking to recover, and could not recover, exemplary damages.
§ 47 0. Actual damages; elements of. Actual damages only were recoverable under the allegations in the petition, and these were predicated upon physical pain and mental suffering alone. It is a rule well settled, that “the corporation must make compensation according to the nature of the injury; such injury may consist of personal inconvenience, sickness, loss of time, bodily and mental suffering, loss of capacity to earn money from personal injury, pecuniary expenses, disfigurement, or permanent physical or mental impairment.” [3 Sutherland on Dam. 259.] Mental suffering may^be estimated as a basis for damages. [W. & W. Con. Rep. § 255; ante, §§ 218, 288; Hays v. R. R. Co. 46 Tex. 274.] Where the damages are actual, and limited to compensation, when the master’s liability for the servant’s or agent’s act is determined, then it follows that, if he is liable for the act, he is liable for any increased estimate of the injury which results from the manner in which it was done. In actions of tort, when the plaintiff’s right to recover is established, he is entitled to full compensatory damages. “Mental suffering produced by the act or omission, vexation, anxiety,” are held to be grounds for compensatory, in contradistinction to exemplary, dam *422 ages. [Sedgwick on Dam. 35.] “He who is guilty of a wilful trespass, or one characterized by gross carelessness and want of ordinary attention to the rights of another, is bound to make full compensation. ... No rule of law requires the mental suffering of the plaintiff, or the misconduct of the defendant, to be disregarded. The damages, in such cases, are enhanced, not because vindictive or exemplary damages are allowable, but because the actual injury is made greater by its wantonness.” [1 Sutherland on Dam. 732.]
November 29, 1884.
§ 477. Trespasser upon railroad track. “Under the rule conceding the right of a free track to a railway company, in the event of an injury to a trespasser upon its line, it can be held liable only for an act which is wanton, or for gross negligence in the management of its line, which is equivalent to intentional mischief.” [1 Thornp. on Neg. 448.] In this case there was evidence sufficient to warrant the conclusion that the act complained of was both wanton and grossly negligent, and furthermore the plaintiff was a child, and was not upon the railroad track when the injury was inflicted, but was distant therefrom some fifteen feet. [Id. 452, § 6; 2 id. 1129.] The defense that plaintiff was a trespasser is not sustained by the evidence.
§ 478. Excessive verdict. We cannot say the damages are excessive. We might have been satisfied with a verdict for less. But it is not for us, it is for the jury, to fix the amount, and they are not so large that we can say they are unreasonable. Who could be found to say that such an amount would be in .excess of compensation to his own or his neighbor’s little girl child? [Craker v. R. R. Co. 36 Wis. 679; Hewlett v. Cruchley, 5 Taunt. 277.]
Affirmed.