JOSEPH BURNETT, Respondent, v. THE WESTERN UNION TELEGRAPH COMPANY, Appellant.

St. Louis Court of Appeals, March 4, 1890.

1. **Practice, Appellate :** NON-PREJUDICIAL ERROR. The giving of an erroneous instruction is not ground for the reversal of the judgment appealed from, when, under the undisputed facts, the appellee is entitled to the judgment recovered by him.

2. **Common Carriers :** TELEGRAMS. Under Revised Statutes, 1879, section 883, a telegraph company operating a telegraphic line in this state is liable for the prescribed penalty of one hundred dollars for the failure to transmit a message, received by it with payment of its charges therefor; it is not necessary that the failure should be due to partiality or bad faith on its part.

3. ———: ———: SABBATH BREAKING. It is no defense that the message was delivered to the telegraph company on a Sunday for transmission, when the sending of it is an act of necessity or of charity; and the sending of it is such an act, when it is sent from a husband to his wife, and its purpose is to explain a protracted absence of the former from home, and to announce the time of his return.

4. ———: ———: ———. The delivery of such telegram for transmission on a Sunday is not rendered illegal by the fact that the sender could as well have sent it on the preceding Saturday, but, through inadvertence, failed so to do.

*Appeal from the Monroe Circuit Court.*—HON. THOS. H. BACON, Judge.

AFFIRMED.

*Charles E. Yeater*, for the appellant.

(1) Section 883 of the Revised Statutes, 1879, is a penal law. *Thompson v. Tel. Co.*, 32 Mo. App. 191; 2 Rapalje & Lawrence's Law Dic. 945, sec. 2; 2 Bouvier's Law Dic. 543; Scott & Jarnigan's Law of Tel., sec. 422;

Pot. Dwar. on Stat. 72, 73. In an action against a telegraph company for the recovery of the penalty provided in said section 883, proof of mere negligence will not suffice, but the evidence must go further, and must establish affirmatively the fact that in not transmitting the dispatch the company was guilty either of partiality or bad faith. *Tel. Co. v. Steele*, 108 Ind. 163; *Tel. Co. v. Wilson*, 108 Ind. 308; *Tel. Co. v. Swain*, 109 Ind. 405; *Frauenthal v. Tel. Co.*, 6 S. W. Rep. 236; *Manz v. Railroad*, 87 Mo. 281; *State v. Bryant*, 90 Mo. 537; *State to use, etc., v. Railroad*, 19 Mo. App. 104; *Parrish v. Railroad*, 63 Mo. 286. It should affirmatively appear from the evidence not only that the sending of the dispatch on Sunday was a necessity, but also that no neglect existed on the part of the plaintiff in failing to send a similar dispatch or similar information on the preceding day, and that the necessity for sending the dispatch on Sunday was not created by such failure and negligence. *Thompson v. Tel. Co.*, 32 Mo. App. 191; *Tel. Co. v. Yopst*, 20 N. E. Rep. 222; *Bucher v. Railroad*, 131 Mass. 156.

*Rodes, Waller & Rodes*, for the respondent.

The third instruction given by the court on its own motion, if erroneous, is at most but a harmless abstraction, and could not prejudice appellant. Statutes that regulate matters of public concern are beneficial, generally, and should be equitably and fairly enforced. *Tel. Co. v. Gougar*, 84 Ind. 176; *Sickles v. Sharp*, 13 Johns. 497; *Cotheal v. Brouwer*, 5 N. Y. 562; *Levy v. Tel. Co.*, 35 Mo. App. 170. It is admitted that the message was never transmitted or delivered, and the burden of explaining or excusing this failure is cast upon appellant. *Tel. Co. v. Davis*, 41 Ark. 79; *Julian v. Tel. Co.*, 98 Ind. 327; *Tel. Co. v. Griswold*, 37 Ohio St. 301; *Bartlett v. Tel. Co.*, 62 Me. 209; *Rittenhouse v.*

*Independent Line,* 44 N. Y. 263; *Turner v. Tel. Co.,* 41 Iowa, 458; *Tel. Co. v. Gougar,* 84 Ind. 176. Under section 883, Revised Statutes, 1879, when it is shown that the message was not transmitted or delivered, and no excuse for such a failure is given, the plaintiff is entitled to recover. This section imposes upon telegraph companies affirmative duties, viz.: *First,* to receive messages; *second,* to transmit them; *third,* to do these acts with impartiality and in good faith, under a penalty for every neglect or refusal so to do, and, for a failure in any of these several regards, said companies become liable for the penalty, whether such failure is occasioned by negligence, or wilful wrong. The court, therefore, did not err in refusing appellant's instructions, and in declaring the law as set forth in its fourth instruction. *Tel. Co. v. Davis,* 41 Ark. 79; *Tel. Co. v. Ward,* 23 Ind. 377; *Tel. Co. v. Lewelling,* 58 Ind. 367; *Tel. Co. v. Gougar,* 84 Ind. 176; *Tel. Co. v. Allen,* 25 Am. & Eng. Corp. Cas. 535. Appellant, in its brief and argument, offers no excuse for its failure to transmit and deliver on the following secular day. It may be conceded that appellant was excusable for not transmitting respondent's dispatch on Sunday, and yet, it being admitted that the message was never sent or delivered, nor the money refunded, the appellant would, nevertheless, be liable. *Tel. Co. v. Yopst,* 11 N. E. Rep. 18; *Glover v. Cheatham,* 19 Mo. App. 656.

THOMPSON, J., delivered the opinion of the court.

Section 883 of the Revised Statutes of 1879 reads as follows : " It shall be the duty of every telephone or telegraph company, incorporated or unincorporated, operating any telephone or telegraphic line in this state, to receive dispatches from and for other telephone or telegraph lines, and from or for any individual, and on payment or tender of their usual charges for transmitting dispatches, as established by the rules and

regulations of such telephone or telegraph line, to transmit the same with impartiality and good faith, under a penalty of one hundred dollars for every neglect or refusal so to do, to be recovered, with costs of suit, by civil action, for the benefit of the person or persons or the company sending or desiring to send such dispatch."

This action is brought to recover the penalty of one hundred dollars given by the above statute.

The case was tried before the court, sitting as a jury, and judgment was entered for the plaintiff for the penalty of the statute, and the defendant prosecutes this appeal.

There is no controvery about the facts. Some of them are agreed upon by the counsel for the respective parties and the rest are delivered in the form of the testimony of the plaintiff, while the defendant offered no evidence. The parties have united upon the following agreed statement:

"On Sunday, June 10, 1888, the plaintiff delivered to defendant's duly authorized agents at Hannibal, Missouri, a certain dispatch and message substantially as follows:

"'Hannibal, Mo., June 10, 1888.
"'To Mrs. Joe Burnett, Monroe City, Mo.:
"'I will be home to-night.
"'(Signed.)    Joe Burnett.'

"The above dispatch was delivered to defendant's agent about the hour of six o'clock—being near the hour the agents of the company changed, viz., about the hour the agent of the day left the service of the office and the night agent went on duty. The plaintiff paid the usual charges demanded for sending the message, viz., the sum of twenty-five cents, and the company retained the same. The company never transmitted or delivered the message to the addressee. It is agreed that the agents of the company will testify that they have no

knowledge, whatever, of the message, and that the same is not found upon the files of the company, and the agents can give no account of said message. It is admitted that the defendant is a corporation and doing business, as alleged in the amended petition, and admitted that notice was served as alleged in said petition, and within the time alleged therein, and that all proper demands have been made by plaintiff. The fact, as alleged in said amended petition, is not admitted by defendant and is left open to plaintiff's proof to be adduced. It is also agreed that either the plaintiff or defendant may make any objection to the competency of the testimony, as set forth herein, and defendant may make any legal objection to the petition which he may desire. The message was written and filled out on one of defendant's blanks, a copy of which is hereto attached and marked "A." It is agreed the company's agents will testify they have no knowledge why the said message was not transmitted and delivered—unless the said message was lost. Plaintiff did not pay to have the message repeated. In event of trial it is agreed this stipulation may be read in evidence."

The plaintiff testified, as a witness, as follows :

"I am the plaintiff in this case. I am a married man, and my family consists of my wife and four children, ranging from three to thirteen years of age. On Saturday, the ninth day of June, 1888, I came from my home at Monroe city, in this county, to Paris, on the noon train. Before leaving, I told my wife I would be back the next day, which was Sunday. At Paris, on that Saturday night, I attended a meeting of my lodge, and at that meeting I received news of the death of Wm. C. Foreman, at Hannibal, Missouri, and I decided then to attend, with the lodge, his funeral at that place the next day, and that Saturday night I went to Hannibal, and did attend the funeral the next day.

On the afternoon of the next day, which was Sunday, June 10, 1888, I went to the telegraph office to notify my wife that I would not be home until late that night, or rather on the train which arrives at two o'clock in the morning of the next day. I gave the operator the message described in the petition, and asked him to have it transmitted and delivered immediately to my wife, explaining my absence and notifying her when I would arrive. This I always do when I am detained from home longer than I anticipate, and my wife expects it, and is anxious when I do not notify her. I explained this to the telegraph operator, and impressed him with the importance of the dispatch. The message never reached my wife, and, when I arrived at home, I found her sitting up awaiting me, and very anxious. I paid the operator twenty-five cents, what he demanded for sending the message, and the company has never refunded it. I asked the agent of defendant, to whom I gave the dispatch, if it could be sent and delivered at once, and he said it could. I explained the necessity that required the prompt sending and delivering of the message to this agent before I left the office, and the agent promised to send the message immediately." On cross-examination, the witness stated that he could not say exactly at what time he received the information, which led him to decide to go to Hannibal, or when he did decide so to go; but it was sometime during the lodge meeting. He did not know whether or not he could have sent a telegram on Saturday night after making up his mind to go to Hannibal. He never thought of it. In answer to the question, " Could you not have sent the information in some way to your wife on Saturday night that you would not be at home on the expected time the next day ?"—he said : " I do not know. I might have done so; but I never attempted to do so, because I thought that I would see somebody on the night train by

whom I could send word to my wife; but did not see any one by whom I could convey such information, and I was engaged all day Sunday attending the funeral and burial services, and could not send the dispatch sooner than I did."

This was all the evidence; and, thereupon, the court gave several declarations of law and refused others, which, so far as deemed material, will be set out and commented upon.

I. The first assignment of error is that the court erred in declaring the law to be "that this statute is remedial rather than penal." There is no doubt that this was an erroneous view of the classification of the statute. It imposes a severe penalty for that which may, under circumstances, visit slight damages upon the sender of the message. It is the same in substance, though not quite the same in language, as the former Indiana statute (repealed by substitution in 1885) which was, by the supreme court of that state, always construed as a penal statute. *Western Union Tel. Co. v. Axtell*, 69 Ind. 199; *Western Union Tel. Co. v. Mossler*, 95 Ind. 29; *Western Union Tel. Co. v. Kinney*, 106 Ind. 468; *Western Union Tel. Co. v. Harding*, 103 Ind. 505; *Western Union Tel. Co. v. Steele*, 108 Ind. 163; *Western Union Tel. Co. v. Wilson*, 108 Ind. 308; *Western Union Tel. Co. v. Brown*, 108 Ind. 538. So far, then, as there is any difference in the rules of construction to be applied as between a penal statute and a remedial statute, we have no doubt that this statute is to be construed as a penal statute. But it does not at all follow from this that the judgment of the circuit court is to be reversed; for the question for decision before the court arose upon an undisputed state of facts, and in such cases, although the court may have proceeded upon erroneous views of the law, yet if, on the whole evidence, the judgment was a proper application of the law to the facts, it cannot be reversed.

II. The court found as a fact that there was "no evidence of any wilful failure or wilful refusal of defendant to send this message;" and also that there was "no evidence of any wilful neglect, or of any bad faith or partiality on the part of the defendant." The court also found and declared "that the defendant failed to transmit the message, and that, in failing to transmit the message, the defendant was guilty of negligence, and that, for neglecting to transmit the message, the defendant is liable in this action." The court also declared the law to be "that the limitation of 'neglect' to 'impartiality' or 'good faith' applies only to cases where the message is transmitted;" and that "neglect to transmit at all does not require the additional feature of partiality or want of good faith; the greater includes the less." The court also refused a declaration of law in the nature of a demurrer to the evidence, and also refused the following declaration of law tendered by the defendant : "It devolves upon the plaintiff to show affirmatively that the telegraph company, in failing to transmit the dispatch, was guilty of partiality and bad faith; and unless it appears from the evidence that the telegraph company was guilty of a preference against the plaintiff, or exercised bad faith towards him, he cannot recover the penalty provided by the statute." The clause of the statute, to which these rulings were addressed, and of which they were intended as an exposition, reads, "to transmit the same with impartiality and good faith, under a penalty," etc.

Counsel for defendant does not, as we understand him, go to the length of taking the position that the company does not make itself subject to the penalty for failing to transmit at all, but that it is not subject to the penalty, unless the plaintiff makes it appear that the failure to transmit was the result of the defendant's want of impartiality and good faith; in other words, that the gist of the offense, for which the statute gives

the penalty, is partiality and bad faith in the conduct of its public duty of sending messages over its wires. This is a very restricted view of the statute, which we do not think we are required to take, even by the most stringent application of the rule that penal statutes are to be construed strictly. We rather think that the duty stated in the clause of the statute above quoted must be understood as being a condensed statement of a three-fold duty : *First*, to transmit messages tendered for that purpose with the charges established by the company's rules and regulations. *Second*, to transmit such messages with impartiality. *Third*, to transmit such messages with good faith. We also think that the word "neglect" in the succeeding clause, which reads, "under a penalty of one hundred dollars for every neglect or refusal so to do," is to be construed as meaning neglect to perform either of these three duties.

The defendant's view would fritter the statute away, and render it entirely useless in every case where the dispatch is received and the customary charges collected, and the dispatch is not sent at all, as in the case at bar. How, in the nature of things, could the sender of the dispatch prove, beyond the inference that would arise from the mere failure to transmit, that the company had been guilty of partiality and bad faith ? How could he get out of the employes of the defendant, who alone would have knowledge of the real reason of the failure to transmit the dispatch, evidence which would convict them of so gross a violation of duty ? Under such a view of the statute, the agent of the telegraph company could receive the dispatch, and throw it into the waste basket, or into the fire, the moment the sender's back was turned, and the latter could never recover the penalty denounced by the statute. This would cut the statute down so as to make it mean that the penalty could be recovered only in cases where the dispatch was in fact transmitted, but where it was not

transmitted with impartiality, that is, where other dispatches received later had been sent before it; or where it had not been transmitted in good faith, that is, where the agents of the company had corruptly delayed sending it to effect some purpose that might be imagined. We think that this would be a partial judicial repeal of the statute.

Our attention has been called to decisions in Indiana and Arkansas construing similar statutes in those two states enacted in the year 1885, which hold that the penalty denounced by the statute is not recoverable in the case of a mere *neglect* to transmit the message, that is, that it is not given as a punishment for mere negligence. *Western Union Tel. Co. v. Steele,* 108 Ind. 163; *Western Union Tel. Co. v. Swain,* 109 Ind. 405; *Frauenthal v. Western Union Tel. Co.,* 6 S. W. Rep. [Ark.] 236. Under the prior statute of Indiana (R. S. Ind. 1881, section 4176), it was held that the right of action for the penalty accrued where the failure to transmit the dispatch was the mere result of negligence. Thus in *Western Union Tel. Co. v. Buchanan,* 35 Ind. 429; s. c., 9 Am. Rep. 744, the message was, by mistake, and in consequence of the gross ignorance of the defendant's operator, sent to the wrong place, but an action for the penalty was nevertheless sustained. The Indiana statute then under consideration was substantially the same in its terms as our statute. It used the words, "shall transmit the same with impartiality and good faith, and in the order of time in which they are received, under penalty, in case of failure to transmit, or, if postponed out of such order, of one hundred dollars to be recovered by the person whose dispatch is *neglected* or postponed." Our statute likewise requires the company "to transmit the same with impartiality and good faith, under a penalty of one hundred dollars for every *neglect* or refusal to do so," etc. But the statute of Indiana of 1885 was drawn in terms quite different. The first section prescribed the

duty, and the third section denounced the penalty; but neither section used the word "neglect," or employed language, from which the necessary inference could be drawn that the legislature meant to give the penalty for mere negligence in transmitting telegraph messages. The holdings under the latter act were influenced by the view that the legislature, in omitting the use of the word "neglect" or any equivalent word, intended to change the rule. This will appear from the following language of Mr. Chief Justice ELLIOTT, in the opinion of the court in *Western Union Tel. Co. v. Steele, supra.* "This conclusion is, indeed, the only one that can be reached without greatly enlarging the words of the statute, and it is strengthened by the fact that the statute, which the statute of 1885 repeals, prescribed a penalty for a negligent breach of duty, while that of 1885 contains no such provision, thus clearly evincing the intention of the legislature not to give a penalty for a negligent breach of duty."

The Arkansas statute of 1885 more clearly pointed to a purpose on the part of the legislature to change the rule, than did the Indiana statute. Prior to the adoption of this last statute in Arkansas, there had been on the statute books of that state a statute (Mansf. Ark. Dig., sec. 6419), which gave a penalty for the negligent failure to transmit a dispatch. This statute was, by the act of 1885, expressly repealed. In view of this repeal, and in view of the further fact that the new statute nowhere contained the word "neglect" or any word of equivalent import, but merely made use of the word "refuse," the court could not do otherwise than hold that it was not intended to give the extraordinary penalty of five hundred dollars for mere negligence in failing to transmit a dispatch, which might result in slight damage to the sender. The court quote with approval the above language of Chief Justice ELLIOTT, and the conclusion is entirely obvious.

But the analogous decisions for the interpretation of our statute, in respect of this question, are the decisions under the prior Indiana statute, which, as above pointed out, was drawn in terms substantially similar to our present statute; and the authority of the supreme court of that state, in construing that statute, is persuasive to the effect that, when the legislature used the word "neglect," it intended to give the penalty for the mere negligent failure to transmit a dispatch.

Aside from authority, there is sound reason for this conclusion. There are many cases where telegraph messages relate to family affairs, and where great mental suffering and affliction are produced by the failure to transmit them, in which the law will give no more than nominal damages, or the cost of sending the message. Illustrations of this will be found in *Logan v. Tel. Co.*, 84 Ill. 468, where the dispatch, which was not transmitted, summoned a son to the death-bed of his mother, and the court intimated that the rule of damages would be nominal damages, or the cost of sending the dispatch. It is further illustrated in *West v. Tel. Co*, 39 Kan. 93, where the action was for damages for failing to deliver a message, in which a son notified his father of the death and funeral of a brother of the latter, and it was intimated that damages for the mental disappointment and suffering could not be recovered. These, and other like decisions (*Gulf, etc., Ry. Co. v. Levy*, 59 Tex. 563; *Russell v. Tel. Co.*, 3 Dak. 315), proceed upon the well-known rule that there can be no recovery for mere mental suffering, which is not the proximate consequence of a physical injury,—except in the case of breach of promise of marriage, and possibly in some other exceptional cases. While there is some tendency in recent cases to break away from this rule (see *Stuart v. Tel. Co.*, 66 Tex. 580; s. c., 59 Am. Rep. 623; *SoRelle v. Tel. Co.*, 55 Tex. 308; s. c., 40 Am. Rep. 805; *Wadsworth v. Tel. Co.*, 86 Tenn. 695; s. c., 6 Am. St. Rep. 864), yet it is apprehended that the well-known general rule, which

would deprive the sender of a telegraphic message from the recovery of damages, beyond the amount paid for transmitting the dispatch, where the damages would be given as a mere solatium for wounded pride, affection or other so-called mental feelings, may have been one of the reasons which induced the legislature, on grounds of public policy, to enact a statute giving damages in such cases in the form of a penalty.

III. The message was tendered for transmission on Sunday. The defendant tendered a declaration of law to the effect that, this being the allegation in the petition and the undisputed evidence, "the finding must be for the telegraph company, unless the evidence further shows that the sending of said dispatch was a work of necessity;" also another declaration of law as follows: "The said dispatch was not a work of necessity, unless, under all the circumstances, it appears from the evidence that it was absolutely requisite that it should be sent on Sunday. But, if the evidence shows that it was a work of necessity, but that the plaintiff neglected to send a similar dispatch or similar information on the preceding day, and by such neglect on his part created a necessity for sending it on Sunday, he cannot recover." The court also gave, at the request of the plaintiff, the following: "The court declares the law to be that the necessity contemplated by the Sunday law is not an absolute necessity, but a relative necessity; and such a relative necessity may be a necessity arising from inadvertence on the part of the person pleading the necessity, but not from wilfulness. The pulling of ears of barley in a field on Sunday to appease a hunger, which might have been readily provided for on the preceding day, would not be, *per se*, a violation of the Sunday law." The court also found as a fact "that the sending of the message and transmitting of the message on Sunday was a work of necessity." These rulings indicate the theory of the court, that the sending of this dispatch, under the circumstances

disclosed in the evidence, was a work of necessity, and that it was none the less so because the necessity, which arose for sending it on Sunday, instead of the previous day, may have been due to the plaintiff's inadvertence. If the sending of this message was not a work of necessity *or charity*, so as to fall within the prohibition of section 1578, Revised Statutes of 1879, the plaintiff cannot recover, because no action will lie for the failure to perform an act prohibited by law. *Thompson v. Tel. Co.*, 32 Mo. App. 191; *Rogers v. Tel. Co.*, 78 Ind. 169; *Western Union Tel. Co. v. Yopst*, 118 Ind. 248.

It will be perceived that in these declarations of law, both those which were given and those which were refused, the court proceeded upon the view that the only exception created by the statute, which denounces the performance of work and labor on Sunday, is in favor of works of *necessity*. It will be seen by the reading of the statute that it also creates an exception in favor of works of charity :—"Every person who shall either labor himself, or compel or permit his apprentice, or servant, or any other person under his charge or control, to labor or perform any work, other than the household offices of daily necessity, or other works of necessity or charity, or who shall be guilty of hunting game or shooting on the first day of the week, commonly called Sunday, shall be deemed guilty of a misdemeanor, and fined not exceeding fifty dollars." R. S. 1879, sec. 1578.

It is a rule of appellate procedure that a case cannot be tried upon one theory, and determined in the appellate court upon another theory. But the rule has no application to cases where the judgment of the trial court is affirmed for reasons other than those on which the trial court proceeded; for, although the trial court has given the wrong reason for the right judgment, or an insufficient reason for a correct judgment, the judgment is not to be reversed, if it is supported by good reasons, and if it is an application of the law to the

undisputed facts. If, therefore, the sending of this message was, under the circumstances disclosed by the evidence, a work of charity, it was not labor or work prohibited by the statute above quoted, although it may not have been a work of necessity.

But we think that it was a work of necessity. The undisputed evidence shows that it was intended to advise the plaintiff's wife of his whereabouts and of the time of his arrival at home, after he had been absent· from home for two days, a portion of his absence being protracted and unexplained to his wife,—in order to allay any anxiety on her part as to his whereabouts and safety. It also shows that this fact was communicated to the agent of the defendant, who received the dispatch. We are of opinion that this was a work of necessity within the meaning of the statute. In Massachusetts, where the court has gone as far, perhaps, as any court in the Union in upholding laws against what is called Sabbath-breaking, it has been said : ''By the word 'necessity' in the exception, we are not to understand a physical and absolute necessity, but a moral fitness or propriety of the work and labor, done under the circumstances of any particular case, may well be deemed necessity within the statute.'' *Flagg v. Inhabitants of Millbury*, 4 Cush. (Mass.) 243. We think that the common sense of those who are most rigorously in favor of Sunday observance would unite in saying that the sending of a message to a man's wife and family under such circumstances—where he had been from home an unexplained and unaccountable length of time—for the purpose of allaying anxiety as to his whereabouts, would be regarded as a work of necessity.

But, if it is not a work of a necessity, we think that it must be pronounced a work of charity. The word "charity" is derived from the Latin *"carus,"* which means "dear, costly, loved." Among the definitions of the word given by Webster are "love,"

"benevolence," "good will;" "any act of kindness or benevolence." Among the synonyms given by the same lexicographer are "love," "benevolence," "good will," affection," "tenderness." In many places in the New Testament where the word "charity" is used in the old version, the word "love" is used in the more accurate translation of the new version. See, for instance, 1 Corinthians, 13, *passim*. The word, as used in the statute, is intended to be understood in its ordinary sense, and to denote something more than mere alms giving; and it is plain that an act intended by a husband to allay anxiety and distress of mind on the part of his wife and children may be performed, or procured to be performed, on Sunday as a work of charity, without violating the statute above quoted.

Then, as to the view which the trial court took, that the necessity which will authorize the doing of work on Sunday "may be a necessity arising from inadvertence on the part of the person pleading the necessity, but not from wilfulness," we think that that is the correct view. We also think that the court rightfully refused the instruction tendered by the defendant, that "if the plaintiff neglected to send a similar dispatch or similar information on the preceding day, and, by such neglect on his part, created the necessity for sending it on Sunday, he cannot recover." We must here recur to the view that the necessity is not a *physical* but a *moral* necessity. If a husband absents himself from his wife and family beyond the promised length of time, and neglects on Saturday to send them information of his whereabouts and the time of his return, he is clearly under the moral duty of sending such information on Sunday, and this moral duty which he owes to them creates a necessity within the meaning of the statute. The duty and the necessity exist, although the circumstances creating them may have been the result of his previous negligence.

But even if the plaintiff's negligence may have created this necessity, we do not see how such negligence could be regarded as rendering it improper for him to perform the duty, and for the defendant to assist him in its performance, if it was a work of *charity*. Can anyone say that a man's negligence on Saturday to perform a work of charity will render it the less obligatory upon him to perform it on Sunday.

We may, perhaps, take even a broader view of the case. Here is a telegraph company which, no doubt, keeps its principal offices open every Sunday in the year, presumably for the sending of messages which relate to works of necessity or charity, and which may, therefore, lawfully be sent. Its operatives are on duty. They receive a message of the kind in question, and accept the regular fee for transmitting it. Upon what principle is public justice advanced, or the cause of morality or religion subserved, by allowing them to take the money of the customer, neglect to send his message, and then plead, what is a mere *afterthought*, that the message was tendered to it on Sunday? Does anyone suppose that this company has refused to receive and transmit a single telegraphic message on Sunday during the past year, when its operatives were on duty and its lines in order? Could a jury be assembled in Missouri that would fine it for sending such a message as the one in question, if it were indicted therefor under section 1578 of the Revised Statutes of 1879? These observations are thrown in to indicate the wide departure from common sense, and from the ordinary habits of thinking of the people, which would be involved in a decision upholding such a defense.

The judgment will be affirmed. Judge BIGGS concurs; Judge ROMBAUER concurs in the result.