INTERNATIONAL OCEAN TELEGRAPH COMPANY, APPELLANT, VS. CHARLES SAUNDERS, APPELLEE.

TELEGRAPH COMPANIES—BREACH OF CONTRACT TO SEND AND DELIVER MESSAGES—DAMAGES—MENTAL SUFFERING.

1. In an action sounding in tort, but for compensative damages for the breach of a contract by a telegraph company to promptly send or deliver a telegraphic message, mental pain and suffering is not an element of damage for which a recovery can be had. And where the failure of a telegraph company to promptly send or deliver a telegram according to its contract results in no other damage than mental pain and suffering, the only recovery that can be had would be nominal damages ; or, at most, the price paid for the transmission of the message.

2. The person *to whom* a telegram is sent can maintain an action for whatever legal damage that results to him from the negligence of the company in its transmission or delivery, where the message shows that he is interested in it, or that it is for his benefit. or that damage will result to him from such negligence.

Mr. Justice Mabry dissenting as to the principles announced in the first head note.

Appeal from the Circuit Court for Brevard county.

The facts of the case are stated in the opinion of the court.

*John E. Hartridge* and *Jones & Atkinson* for Appellant.

*D. L. Gaulden* for Appellee.

TAYLOR, J.:

The appellee sued the appellant, in case, for its alleged negligence in not promptly delivering to him a telegram transmitted over its line. The plaintiff recovered judgment for $1,200, and from such judgment the defendant company appeals.

The declaration is as follows: "The defendant, Charles Saunders, by D. L. Gaulden, his attorney, sues the International Ocean Telegraph Company, for that whereas the defendant on the 4th day of October, A. D, 1890, was possessed of and using and operating a certain telegraph line extending from the city of Jacksonville, Duval county, State of Florida, to the town of Titusville, Brevard county, State of Florida, that said two places are distant from each other about 160 miles, and are connected by direct line of said defendant telegraph company, and the Jacksonville, Tampa & Key

West Railway. That plaintiff's wife, Alice J. Saun-
ders, on the said 4th day of October, 1891, was seized
with a mortal malady in the said city of Jacksonville,
and that about the hour of seven o'clock on the morn-
ing of October 4th, 1890, the superintendent of St.
Luke's Hospital presented to the defendant the follow-
ing message, to-wit:

"JACKSONVILLE, Fla., Oct. 4th, 1890.
Charles Saunders,
          Titusville:
Wife dying; come at once, or send wishes by wire.
                    (Signed) SUPERINTENDENT
                          St. Luke's Hospital."

That said message was accepted by the defendant for
immediate transmission and delivery to him at Titus-
ville at the full rate charges or toll, and that through
the gross, wanton and reckless negligence of defend-
ant, and in palpable violation of its duty the message
was held by the defendant and not delivered to him
until about the hour of half past nine o'clock on the
night of the sixth day of October, A. D. 1890. That said
message was received at said Titusville office on
the morning of the fourth day of October, 1890, at
half past eight o'clock, but was not delivered to him
for over sixty hours after the same was received
at the Titusville office. That his said wife died
in the city of Jacksonville on the 6th day of October,
1890, and hence said message was not delivered to him
or received by him until ten and a half hours after his
said wife's death. That there was only one train leav-
ing Titusville each day, at the hour of nine o'clock A.
M., for the city of Jacksonville, which said train ar-
rived in Jacksonville at the hour of half past six
o'clock P. M. That had said message been delivered
promptly he could have arrived in Jacksonville on Sat-

urday night, October 4th, 1890. That by reason of this negligence and breach of duty on the part of the defendant, he was prevented from telegraphing to said superintendent his wishes, and was prevented from attending his dying wife and ministering to her in her last hours, and also from making desired preparations for her interment. That said message was sent by the superintendent of St. Luke's Hospital, and he paid defendant full rates or toll therefor, to-wit: the sum of forty cents, at the Titusville office, and as said defendant failed to deliver said message promptly, and notified the said superintendent of St. Luke's Hospital that said message had not been delivered, and collected the sum of forty cents charges on said message, which said forty cents was charged to plaintiff by said superintendent, and which he had to pay, thereby entailing a loss of forty cents on this plaintiff. By reason of which said defaults, wrong and negligence on the said defendant's part, plaintiff incurred a loss and damage of the said forty cents, paid as aforesaid on account of the charges made and collected from said superintendent of St. Luke's Hospital, which plaintiff had to pay as a legitimate charge against him. And besides this the plaintiff suffered great damage by reason of said wrong and injury so done by the defendant to his affections and feelings; and the plaintiff then and there suffered great damage in anguish and pain of mind by reason of the said negligence and wrong so done him by defendant. That while his said wife was dying she was deprived of that care, attention, consideration and consolation which she would have received but for said negligence of said defendant in failing to deliver said message promptly as aforesaid, and that by reason thereof he was damaged in that he suffered great mortification, anguish and pain of mind and injury to

his feelings and affections in not being able to be with his said wife in her dying hours, and in not being able to make preparations for his wife's funeral and interment, all of which damaged plaintiff in the sum of $1,995," etc.

At plaintiff's request the following instruction was given to the jury : "If from the evidence you believe that the superintendent of St. Luke's Hospital sent the following message to the plaintiff: 'Wife dying; come at once, or send wishes by wire,' and said message was accepted by the defendant for transmission, and the toll or charges on same was paid to defendant, and this message was negligently delayed in delivery by defendant company, whereby plaintiff Saunders was prevented from attending his dying wife, and from making desired preparations for her funeral, the plaintiff, Saunders, would be entitled to recover for the wrong and injury done his feelings, and for the mental anguish and pain of mind suffered by him; and in making up your verdict you must take into consideration all the testimony and fix his damages, if any, at such amount as you think from the evidence is just, reasonable, proper and fair." To this charge exception was taken, and the error assigned thereon presents the real issue involved in the cause: Can an action be sustained and can damages be admeasured for the breach of a contract that results in *mental suffering alone*, without any accompanying physical injury or suffering, and without any concomitant damage to the person, character, reputation or property?

The Supreme Court of Texas, in So Relle vs. Western Union Tel. Co., 55 Texas, 308 (decided in 1881), a case in which the telegraph company negligently failed to promptly deliver a telegram informing plaintiff of the death of his mother, and summoning him

to meet a conveyance at a certain point that night, that would carry him to where the remains of his mother were, in time to attend her funeral, first led off with an affirmative answer to the question. The court in that case asserts that it is the settled rule of law in that state that injury to the feelings, caused by the *wilful* neglect or fault of another, constitutes su h actual damages for which a recovery may be had, and cites as authority for such assertion the cases of Hays vs. H. & G. N. R. R. Co., 46 Texas, 279, and H. & G. N. R. R. Co. vs. Randall, 50 Texas, 261. In neither of these cases is the doctrine either settled or asserted that injury to the feelings, or mental suffering *alone* can be made the subject of a suit for *compensative* damages. The case of Hays, *supra*, was against a railroad company for damages for wrongfully and forcibly ejecting the plaintiff from its passenger train in the presence of his wife and family, in which it was claimed that the ejectment was done in a rude and insulting manner, and by personal violence, resulting in injuries to plaintiff's clothing, and bruises to his person. Exemplary or punitive damages were claimed, and the jury were instructed to estimate the *actual* damages by the "injuries sustained by the plaintiff in his person, his estate and his feelings," and it was held that by this charge the subject of the amount of actual damages was fairly placed before the jury. But nowhere is it asserted that mental suffering *alone* can be made an independent basis for admeasuring damages. The case, like many others *founded on tort* that might be cited, simply holds that mental suffering or injured feelings may be taken into consideration as an element of damage *when coupled with* or accompanied by substantive injury to the person or estate, upon the ground, as stated in the authorities,

that in such cases the mental suffering growing out of and produced by the physical injury is so interwoven with the latter that it is impossible to consider the one without contemplating the other. City of Salina vs. Trosper, 27 Kan., 544; Mulford vs. Clewell, 21 Ohio St., 191; Canning vs. Williamston, 1 Cush., 451; I. & St. L. R. R. Co. vs. Stables, 62 Ill., 313; Johnson vs. Wells, Fargo & Co., 6 Nev., 224; Kennon vs. Gilmer, 131 U. S., 22; Trigg vs. St. L., Kansas City & Northern Ry. Co., 74 Mo., 147. The same may be said of the case of Randall, *supra.* In that case the plaintiff, a brakeman on the defendant's trains, sued the company for damages for its negligence in having an open ditch across its track, into which he fell while performing the duty of coupling two of defendant's cars, and whereby his arm was run over and crushed by the cars, necessitating its amputation. In that case, too, the doctrine is sanctioned that an element of the verdict may be compensation for the *mental and physical* suffering *caused by the injury.* But nowhere is the doctrine sanctioned that mental suffering alone can sustain an action. For the support of its ruling in the So Relle case the Texas court next quotes at length the dictum of the authors of Shearman & Redfield on Negligence, which dictum—as originally incorporated in their work —was entirely without the support of any adjudged case. The seduction case of Phillips vs. Hoyle, 4 Gray, 568, is next invoked to the support of the Texas court, where injury to the feelings of the parent in consequence of the daughter's seduction was held to be an element of damages. The fact seems to have been overlooked, in citing this case to its support, that in cases of seduction, and other *torts* independent of contract. *injured feelings* are given consideration, not so much as a criterion for the admeasurement of *com-*

*pensation*, but as a standard by which to estimate the *enormity of the outrage*, wilfully committed, and as a guide whether the damages to be allowed, *as punishment*, shall be higher or lower. The next and last authority cited to the support of the So Relle case is the case of Roberts vs. Graham, 6 Wall., 578, but we fail to find in it any reference whatever to the subject of damages for injured feelings or mental suffering, the whole case being confined to a discussion of the question of the sufficiency of the allegations of a declaration or complaint for general damages as a predicate for the introduction of proof of special damage. The doctrine of the So Relle case has for its support, then, in reality, only the unsupported dictum of Mess. Shearman & Redfield, in their work on Negligence.

In the case of Gulf C. & Santa Fe Ry. Co. vs. Levy, 59 Texas, 563, decided in 1883, the So Relle case was expressly overruled in so far as it held that an action for mental suffering alone could be maintained. In Stuart vs. Western Union Tel. Co.,' 66 Texas, 580, decided in 1886, the Levy case, *supra*, is practically overruled, and the court, without the support of any additional authorities, returns to the doctrine of the So Relle case. The ruling in Stuart vs. Western Union Tel. Co. has been adhered to in that state ever since, encumbered, however, with finely drawn distinctions that seem to keep an even pace with the rapid increase of litigation that the enunciation of such a doctrine would naturally engender. Western Union Tel. Co. vs. Cooper, 71 Texas, 507; Western Union Tel. Co. vs. Broesche, 72 Texas, 654; Western Union Tel. Co. vs. Simpson, 73 Texas, 422; Western Union Tel. Co. vs. Feegles, 75 Texas, 537. In Beasley vs. Western Union Tel. Co., 39 Fed. Rep., 181. the Circuit Court of the United States for the Western District of Texas, the

same doctrine is announced upon the authority alone of the holdings of the Supreme Court of that state.

The Supreme Court of Tennessee, in Wadsworth vs. Telegraph Co., 86 Tenn., 695, by a divided court, next follow the Texas doctrine, citing only the dictum of Shearman & Redfield in addition to the Texas cases. The dissenting opinion of Judge Lurton in that case is unusually forceful and clear, and, according to our view, states the true rule in an argument that is unanswerable.

The Supreme Court of Indiana, in Reese vs. Western Union Tel. Co., 123 Ind., 294, next follows the Texas doctrine, citing only the cases from that State with the additional case from Tennessee.

The Supreme Court of Kentucky, in Chapman vs. Western Union Tel. Co., 30 Am. & Eng. Corp. Cases, 626, next cite and follow the Texas and Tennessee cases.

The Supreme Court of North Carolina, in Young vs. Western Union Tel. Co., 107 N. C. 370, next cite and follow the Texas cases, citing to its support also the cases from Tennessee, Kentucky and Indiana that, it will be remembered, are predicated upon the Texas cases.

In Stuart vs. Western Union Tel. Co., *supra*, the liability of telegraph companies to damages for mental suffering caused by their failure to transmit or deliver telegrams is put expressly and pointedly upon the ground, that the mental suffering produced by the company's breach of its contract was within the *contemplation* of the company at the time it made the contract as the result that would naturally follow a breach of it.

Would the Texas court award damages to one individual for the poignant mental sting resulting from

being wilfully, publicly and deliberately taunted on the street by an irate enemy with the insult that he was a cowardly cur, simply because the mortification and wounded feelings that would surely follow were *within the contemplation of the insulter?* We apprehend not; and yet in the latter case the deliberate *purpose* of the insulter would. be to produce such mental anguish.   To draw the comparison closer still : An individual borrows his neighbor's money, agreeing to pay at a given day, knowing in advance that his default then will surely result in the mind-harrowing tortures to his accommodating friend of utter financial ruin—a species of suffering that, unfortunately, to many is far more acute than any connected with the ties of kinship—could damages be allowed in that case for the mental torture, simply. because the borrowing friend *contemplated* and *knew* that it would follow as the result of a breach of his contract to pay?  Certainly not; and yet such is the effect of the doctrine announced in the Stuart case when followed to its logical result.   Suppose a mother, whose child is critically ill, contracts with her neighbor, at a stipulated price paid in advance, to summon her husband, temporarily absent some distance away, and the neighbor delays complying with his contract until after the death and burial of the child, would damages be awarded against him to compensate the parents for the mental anguish suffered by them in consequence of the absence of the husband under such circumstances? We apprehend not.   And if not in the case of the violated contract between individuals, where is the reason for applying a different rule where one of the contracting parties is a telegraph company?  In all of these cases, taking them up *seriatim* in the order in which they were rendered, there is a conspicuous ab-

sence of anything like a logical reason upon which to base the newly announced docrtine of allowing *compensative* damages for injured feelings alone. They simply follow each other without the addition of any new light or other attempt at *reason* for the thing, than is contained in the parent Texas case. None of them undertake to invent any crucible in which mental pain can, with anything like judicial accuracy, be converted into *compensative* dollars; but all of them are plethoric with argument admirably suited to cases that call for the infliction of *punishment*, with none to guide us to the door for *just compensation.* Yet, as a matter of course, none of them pretend to ground the right of recovery upon the idea that the infliction of punitive or exemplary damages is permissible in such cases.

It should not be lost sight of in considering this class of cases that, although the action, as in the present case, is *in form ex delicto*, its *foundation is a contract*, and, that in *substance*, it is an action *ex contractu* for *compensatory* damages for the breach of such contract. Tort being defined to be "a wrong *independent* of contract." Addison on Contracts (7th ed.), 1. We should keep closely in mind also that in actions sounding in tort but growing out of contracts, with the single exception of the breach of a contract to marry, that in this respect is *sui generis*, exemplary or *punitive* damages are never permitted, but only the actual damage resulting from the breach. Field on Damages, sec. 94; 3 Parsons on Contracts, 180; Lawson on Contracts, sec. 463. With these principles in mind, and in view of the utter impossibility of either proving or affixing a monetary valuation upon mental suffering, it seems apparent that in order to sustain the money award therefor, we must do so

necessarily without proof, and are driven to the necessity of confessing that a jury in awarding it can not be governed by any other guide or check than that dictated by whim or arbitrary caprice, the same latitudinous and uncertain field in which they are left when dealing with a case calling for *punishment* instead of compensation.

In Lynch vs. Knight, 9 H. L. Cases, 577, Lord Wensleydale says: "Mental pain or anxiety the law can not value, and does not pretend to redress, when the unlawful act causes that alone; though where a material damage occurs, and is connected with it, it is impossible a jury, in estimating it, should altogether overlook the feelings of the party interested." In Blake vs. Mid. Ry. Co., 10 Eng. Law & Eq., 437, where a widow sued for the death of her husband under the statute of the 9th and 10th Victoria, c. 93, allowing damages in such cases, Lord Coleridge says: "The jury, in assessing the damages, are confined to injuries of which *a pecuniary estimate can be made*, and can not take into their consideration the mental suffering occasioned to the survivors by his death." Wyman vs. Leavitt, 71 Maine, 227; Johnson vs. Wells, Fargo & Co., 6 Nev., 224; Webb vs. Denver & Rio Grande West. Ry. Co. (Utah), 44 Am. & Eng. R. R. Cases, 683.

In Detroit Daily Post Co. vs. McArthur, 16 Mich., 447, a libel case in which Chief-Justice Cooley concurred, Judge Campbell, delivering the opinion of the court, says: "The injury to the feelings is only allowed to be considered in those *torts* which consist of some voluntary act, or very gross neglect, and practically depends very closely on the degree of fault evinced by all the circumstances." From these authorities it seems to have been the settled rule of law,

prior to the doctrine applied by the Texas courts to the breach of contracts by telegraph companies for the transmission or delivery of telegraphic communications relating to domestic affairs, that *mental suffering* was never allowed to be considered as an element of damages for which pecuniary *compensation* could be awarded, except (1) in cases of *torts* where there was some physical injury and bodily suffering; in which cases, whether there were any circumstances justifying exemplary damages or not, the mental suffering, *incident to, connected with* and *flowing directly from* the physical injury, was permitted to be considered *in connection with the physical pain*, both *taken together*, but not the one disconnected from the other; and (2) in cases founded *purely in tort* where the negligence was so gross as to reasonably imply malice; or where from the entire want of care or attention to duty, or great indifference to the persons, property or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages; and (3) in cases *growing out of contract*, in the *one exceptional case* of the breach of a contract to marry. It is impossible for us to conceive of a case where *compensation*, only, in its strictest sense, for the breach of a contract is sought for, and in which the only element of injury is temporary mental pain, how any award for such mental suffering can be sustained on the theory of *compensation*, without violating the fundamental principles of the law in the administration of civil redress. One of these principles is, that verdicts awarding pecuniary compensation, strictly speaking, must be supported by competent proofs. Can the extent or moneyed value of mental anguish be established, even approximately, by any known method of legal proofs? If not, then the verdict assigning to it a value in dol-

lars and cents can not stand because of the want of proof to sustain it. Because of this, as it seems to us, insurmountable difficulty, we can not agree with the Texas and other courts that have followed her, in sustaining pecuniary awards for mental suffering that are wholly unsupported by any recognized legal proofs. In this view of the law we are fully sustained by the able opinion of Judge Cooper, in Western Union Tel. Co. vs. Rogers, 68 Miss., 748, in which the authorities are exhaustively reviewed and tersely criticised, and by the following cases: Burnett vs. Western Union Tel. Co., 39 Mo. App., 599; Russell vs. Western Union Tel. Co., 3 Dak., 315; West vs. Western Union Tel. Co., 39 Kansas, 93; Chase vs. Western Union Tel. Co., 44 Fed. Rep., 554; Crawson vs. Western Union Tel. Co., 47 Fed. Rep., 544; Owen vs. Henman, 1 Watts & Serg., 548. See also the exhaustive opinion by Justice Lumpkin, of the Supreme Court of Georgia, rendered in March, 1892, in Chapman vs. Western Union Tel. Co., 88 Ga., 763.

In the case under consideration the plaintiff's suit, though sounding in tort, is for *compensation* only, for the breach by the defendant telegraph company of its contract promptly to deliver a telegram summoning him to the death-bed of his wife. His only injury, resulting directly from such breach of contract, was mental suffering and disappointment in not being able to attend upon his wife in her last moments, and to be present at her funeral. The resultant injury is one that soars so exclusively within the realms of spirit land that it is beyond the reach of the courts to deal with or to compensate by any of the known standards of value. It presents a class of cases where legislative action fixing some standard of recovery would be highly appropriate, but until this action is taken we

do not feel that the courts are authorized to so widely diverge from the circumscribed limits of judicial action as to· undertake to mete out compensation in money for the spiritually intangible. Under these circumstances we do not think that the plaintiff was entitled to any other than nominal damages, ·or, at most, the cost of the message whose delivery was delayed. The charge of the court that was excepted to was erroneous. This disposes of the main question involved. Upon the other question presented, as to whether the· person to whom a telegram, like the one involved herein, is sent can maintain an action for any legal damage that may result to him from the negligence of the company in its transmission or delivery, we are of the opinion that he can where the message shows that he is interested in it, ·or that it is for his benefit, or that damage will result to him from its negligent transmission or delivery. Gray on Communication by Telegraph, Section 65, and citations; Thompson on Law of Electricity, Sections 426, 428 *et seq.*, and citations.

The judgment of the court below is reversed and a new trial ordered.

MABRY, J., dissenting.

The opinion of the majority of the court adopts the view that the person to whom a telegraphic message is sent, like the one in the case before us, can maintain an action for *any legal damage* that may directly result to him by reason of the violation of duty on the part of the company to send or deliver the message, where it appears that the party is interested in it, or is so connected with it as to be damaged on account of said neglect of duty. The obstacle thrown in the path of the plaintiff's recovery in the present case relates to the damage for mental injury alleged to have been

suffered on account of the company's neglect of duty in seasonably delivering the message sent. The message, for a failure to deliver which suit was brought, is perfectly plain, and there is no obscurity about its meaning. It is a summons of an absent husband to his dying wife, and there is no question about the company's receipt of the usual toll for transmitting the message and its undertaking to transmit the same. The plaintiff, according to his showing, sent his sick wife from Titusville to St. Luke's hospital in Jacksonville, where he had made arrangements for her to go and be treated.. Titusville is in reach of Jacksonville by a half day's public travel. At the time plaintiff's wife left Titusville for Jacksonville he wired the hospital that she would arrive at a certain time, and informed the company's operator at Titusville of the wife's condition, and told him that as he (plaintiff) expected to have business with the company, if any messages came for him he would be working in Titusville,. and boarding at the Lund house. The company introduced testimony tending to show that its messenger boy, after the message was received, hunted for plaintiff in Titusville, and could not find him, and was told by parties that plaintiff had left town. Plaintiff remained in Titusville, however, and worked on a building being erected not far from the telegraph office; and there is no contradiction of plaintiff's testimony about the information he gave to the company's operator above mentioned. On the morning of the 4th of October a message was sent over the company's line, and received at the Titusville office for the plaintiff in the following words: "Wife dying; come at once, or send wishes by wire." This message was not then delivered, but on going to the telegraph office after dark on the

sixth day of that month plaintiff was handed the mes-
sage after his wife was dead and had been placed in
the hands of the undertaker for interment. If the
message had been seasonably delivered, the plaintiff
could easily have been with his wife some time before
her death, and could have arranged for her burial.
The cost of transmitting the message was charged to
plaintiff and he paid it.

If the jury believed plaintiff's testimony, the inex-
cusable violation of duty on the part of the company
not only caused plaintiff the useless expenditure of
the cost of transmitting the message, but inflicted
upon him directly great mental anguish and injury, as
he testifies. The majority opinion holds, in effect, that
there is no law in force in Florida to authorize the
plaintiff to recover damages for mental pain and injury
in such a case. Telegraphy is an American invention
of comparatively recent date, long after the establish-
ment of the common law rules which have come to us
from former ages, and, I think, the application of legal
rules to telegraph companies, as shown by the prepon-
derance of judicial thought in this country, should
influence us in determining here for the first time
whether or not there is any law for redressing such an
admitted violation of public duty. It can not be suc-
cessfully denied that a decided majority of the Amer-
ican state courts have held the company liable in such
cases. The opinion of the majority of the court in
the present case shows the decisions in Texas, Tennes-
see, Indiana, Kentucky and North Carolina have held
such to be the law independent of any statutory regu-
lation, and the decision in W. U. Tel. Co. vs. Hender-
son, 89 Ala., 510, 7 South. Rep., 419, should be added.
I do not understand that the opinion of the majority
of the court claims for its support a majority of the

decisions numerically, and it expressly plants itself upon the dissenting opinion in the Tennessee case. I think Judge Lurton's opinion in that case is the ablest I have seen on that side of the question, and if I could get my consent to follow, in such cases, the minority decisions, I would adopt that one as the best.

The decisions cited from Mississippi, Georgia, Dakota and Kansas support the main opinion. The one from Missouri was for the recovery of a statutory penalty of $100 for the neglect of the company to transmit a message from a husband away from home to his wife informing her that he would be at home the night of the day it should have been sent. The recovery was sustained, and in the opinion reference is made to the decisions holding that substantive damages for mental pain disconnected with physical injury could not be recovered, with the suggestion that the knowledge of such rule may have induced the legislature of Missouri to enact the statute under which the recovery was had.

It seems to be contended in the minority decisions that the rule enforcing liability for mental injury in such cases had its origin in the statement of the law by text-writers. The Mississippi case says: "It is upon the suggestion of text-writers supported by authorities which have been given a strained construction, and upon a missapplication of the rule that damages for breach of contract are commensurate with the injury contemplated by the parties, that some courts in recent years have decided that mental pain and anguish, disconnected from physical injury, furnish a substantive cause of action for which recovery may be had." Shearman & Redfield are the offending initiatory text-writers in declaring in favor of the rule allowing damages in such cases (sec.

756, vol. 2), and a liberal share of criticism has been bestowed upon them for so doing. *Vide* also the text in Thompson on Electricity, sec. 379. It will be apparent, however, upon a fair reading of all that has been decided on this subject in this country—the birth-place of telegraphy—that the majority opinion is in favor of a different rule from that adopted by the opinion of the majority of the court in the case before us, and as I do not think the reasons for departing from the prevailing views are sufficient, I can not consent to do so.

There can be no question but that the failure of the telegraph company to send or deliver a message can directly cause substantive damage and injury to the mind. The injury to the feelings inflicted directly by the company's violation of duty may be greater than pecuniary loss to the pocket or to the reputation of a person. Mr. Wharton says in his book on Negligence, sec. 758: "A telegraphic company, wielding a power for good or evil only transcended by railway corporations, is eminently within the scope of the rule *Sic utere tuo ut non alienum lædas.* If it undertakes to exercise so tremendous a franchise, it must do so in a way which may not injure others." In 3 Sutherland on Damages, page 314, it is stated that: "In England, the only duty of a telegraph company is that arising out of contract, and, therefore, only the sender or party making the contract has a right of action. * * * In this country, however, a different doctrine prevails. The company's employment is of a public character, and it owes the duty of care and good faith to both sender and receiver." In the Georgia case, cited in the majority opinion and specially approved, the learned judge uses this language in his opinion: "But it is urged that the public occupation of telegraph

·companies creates between them and the public a special relation in which their responsibility is greater than that of other persons.    So much of their business and profit is derived from the acceptance of messages involving feelings only, that at first view it would seem legitimate and salutary to require them to answer in damages for any dereliction of duty in this important matter of their activity.    The argument is that in the exercise of a public employment, they undertake for hire to serve the feelings of their customers, and therefore, ought to pay for negligent non-performance or mis-performance of this peculiar function. This reasoning is unanswerable in so far as it proves a right of action to arise out of the breach of duty.''    There is here no confusing and misleading reference to the liabilities of individuals and corporations, but a just concession of legal duty imposed by the relation of a public trust and station.    Where a corporation is created with the right and power to transmit telegraphic messages for compensation, and it engages in such employment and undertakes to send such messages, it is under a duty to the public to perform its undertakings, and a failure to do so is a clear violation of public duty.    The authority cited recognizes such a duty, and the law on this point is clear.    The Georgia court, however, found for it an insuperable difficulty, as I understand the decision, in sustaining the action on account of the admeasurement of the damages.    That is a serious difficulty in the majority opinion here.    It goes too much into the realm of psychology, and there is no reliable way of ascertaining the injury to such an intangible and spiritual a thing as the mind.    That damages have been and are constantly being awarded in many cases for pain and anguish of mind is admitted, but it is said that such damages are allowed

only where some physical injury has been inflicted, and the mental injury is so connected therewith as not to be severable therefrom. Would not the same argument used in behalf of the telegraph companies exclude any inquiry into mental pain in all cases? Does not the same uncertainty as to ascertainment of the injury exist as much in the one case as in the other? The liability of the company can rest upon a safe and sure ground, without going into the field of speculation, and I think the majority of the decisions imposing such liability are right.

A telegraph company is under a public duty by reason of its public station and employment to transmit and deliver a plain, decent telegram, like the one in this case, and when the company accepts the usual toll and undertakes to send and deliver the message a contractual obligation exists between the company and the sender, or the party in interest, as the case may be. The contract may be waived, and suit brought in case for tort for breach of the public duty, the contract serving only the purpose of showing the relation of duty or obligation between the parties. This is the way the plaintiff sued in the case before us. That this can be done is beyond question. Rich vs. N. Y. Central & Hudson R. R. Co., 87 N. Y., 382. In actions of tort the plaintiff has a right to recover such damages as result proximately and naturally from the wrongful act of the defendant. The company is under a public duty to do a certain specific thing, that is in the case here to transmit and deliver a message informing the husband that his wife was dying. The husband had a right to rely upon the company to perform this duty, as it had invited such confidence. On a violation of this duty the company should be held liable for the damages that result proximately and naturally there-

from.   As was said in one of the decisions cited in the main opinion: "If a telegraph company undertakes to send a message and fails to use ordinary diligence in doing so, it is certainly liable for some damage.   It has violated its contract, and whenever a party does so he is liable at least to some extent.   Every infraction of a legal right causes injury, in contemplation of law.   The party being entitled in such a case to recover something, why should not an injury to the feeling which is often more injurious than a physical one, enter into the estimate? Why, being entitled to some damage by reason of the other party's wrongful act, should not the complaining party recover all the damages arising therefrom?"   In the Alabama case it was held that when the plaintiff is entitled to recover for the cost of the telegram, he may also recover for mental pain and injury resulting directly from the violation of duty on the part of the company.   "In cases of bodily injury, the mental suffering is not more directly and naturally the result of of the wrongful act than in this—not more obviously the consequence of the wrong done than in this." That a rule for recovery against the company in such cases should exist is acknowledged by all.   I find such a rule already established by a majority of the decisions made by eminent judges and courts of high standing in this country, and I am in favor of following them.   They are on the side of right and justice.