**WORTHAM–CARTER PUB. CO. v. LITTLE-PAGE. (No. 9324.)**

(Court of Civil Appeals of Texas. Ft. Worth. May 1, 1920.)

**1. Libel and slander ⬡⟹49, 148 — Newspaper publisher chargeable with wrongful publication of a libel.**

Generally, a newspaper publisher may, when done in good faith and ·without intent to injure, print and circulate any item, whether true or false, without pecuniary or criminal liability other than that arising from loss of confidence and esteem in the minds of the public, but he is responsible for an abuse of that privilege and may be punished for the publication of a libel. Pen. Code 1911, arts. 1151–1179.

**2. Libel and slander ⬡⟹50—Untrue statement that plaintiff was indicted, ground for actual damages, though made through innocent mistake.**

The untrue statement published in a newspaper that plaintiff, a physician, had been indicted for violation of the Harrison Anti-Narcotic Act (U. S. Comp. St. §§ 6287g–6287q) constitutes a libel within the meaning of Rev. St. 1911, art. 5595, and the statement being false cannot be defended on the ground that it was privileged matter within article 5597, so that the defendant, however innocent may have been the mistake, is liable for actual damages.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Libel.]

**3. Libel and slander ⬡⟹120(2) — Exemplary damages allowable only where fraud, malice, etc., exist.**

Exemplary damages for libel are allowable only where fraud, malice, gross negligence, or oppression exist, and are awarded in the way of punishment of the wrongdoer and not as a reimbursement of legal damages to the injured party.

**4. Libel and slander ⬡⟹120(2), 123(10)— "Malice" warranting exemplary damages must be actual and is a question of fact.**

The "malice," meant and required as a basis for punitive or exemplary damages for a libel, must be actual and not merely imputed, and, while malice may be inferred from and proven by circumstances showing an utter disregard of the rights of another, an indifference to the infliction of the injury, or gross negligence, such inference is one of fact and not of law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Malice.]

**5. Libel and slander ⬡⟹112(2)—Evidence held not to warrant inferences of actual malice.**

In an action against a newspaper for libel, evidence *held* not to warrant an inference of actual malice on the part of either the reporter mistakenly reporting that plaintiff was indicted or on the part of the newspaper which promptly publish a correction so that exemplary damages were not warranted.

**6. Libel and slander ⬡⟹120(2) — Exemplary damages not allowable against a newspaper corporation not ratifying mistake of reporter.**

In an action against a newspaper corporation only for publishing a false statement that defendant was indicted by a federal grand jury, where there was no proof of any actual or express malice or gross negligence or oppression on the part of any one shown to be an officer of the corporation and it appeared that the mistake or act of the reporter whether with or without malice was not ratified by it, but

on the contrary an immediate correction of the error was published as soon as discovered, exemplary damages were not allowable against the corporation.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by H. B. Littlepage against the Wortham-Carter Publishing Company. Judgment for plaintiff, and defendant appeals. Judgment affirmed as to actual damages on condition of remittitur as to exemplary damages.

Samuels & Brown, of Ft. Worth, for appellant.

Nicholson & Kent, of Ft. Worth, for appellee.

CONNER, C. J. This is an appeal from a judgment in favor of appellee for actual and exemplary damages because of a publication in the Ft. Worth Star-Telegram, an evening paper published by the appellant company, of appellee's name as one that had been indicted by the federal grand jury for a violation of the Harrison Anti-Narcotic Act (U. S. Comp. St. §§ 6287g–6287q). Appellee alleged that the publication was false and that it had been made maliciously with the intent to injure him.

The defendant company, in addition to a general denial, specially pleaded that the name of Dr. H. B. Littlepage had been included among the names of the persons indicted by the federal grand jury through an innocent mistake on the part of one of its reporters, and that the publication had been made in good faith and without malice or intent to injure the plaintiff in any degree, and that soon thereafter, the error having been discovered, full acknowledgment and correction of the error had been made in subsequent issues of the paper.

The trial, before a jury, resulted in a verdict for the plaintiff in the sum of $500 actual damages and the further sum of $750 as exemplary damages.

Under the first assignment of error, complaint is made of the action of the court in submitting the issue of exemplary damages to the jury, and this presents the material question for our determination on this appeal. In substance, the testimony is to the effect that a Mr. Henry, one of appellant's reporters, shown to be a careful, prudent, and competent reporter, was detailed to report the action of the federal grand jury in session at the time; that the grand jury made its report about 2 o'clock on the afternoon of April 19, 1919; that 37 indictments were returned by the grand jury, which were brought into the clerk's office and laid on a desk, unfolded and face up; that the names of the persons indicted, except in the case of the one under consideration, severally appeared immediately after the formal opening allegations; that the reporter in gathering the names of the indicted persons merely examined the opening part of the indictment and therefrom took the several names reported; that, in the case of appellee, Dr. Littlepage's name appeared first in the place where the names of the defendants in other indictments appeared. It turned out, however, that the indictment in his case further recited that Dr. Littlepage was a regular practicing physician in the city of Ft. Worth, and that one Wallace Wyatt had forged his name to a prescription, prescribing the forbidden drug in violation of the Harrison Anti-Narcotic Act, and thereupon charged the said Wallace Wyatt with the violation of that law.

The evidence further shows without dispute that the evening publication of the Ft. Worth Star-Telegram went to press about 2:30 in the afternoon, and that the reporter named therefore felt somewhat hurried in order to get the report of the grand jury in said evening edition. It is further undisputed that neither the reporter nor the city editor to whom the report was submitted, nor the editor in chief, knew Dr. Littlepage or had for him any ill will whatever, and that the publication was made in actual good faith and intended as an item of public news, proper for publication. It appeared, however, that neither of these parties in advance of the discovery of the mistake made any investigation or in any way attempted to verify the report as published. It further appears that the evening edition of the Star-Telegram in which the objectionable publication appeared was intended for circulation in and near the city limits, a later edition being published for circulation at other and distant points; that within a few hours after the publication of the evening edition the mistake in the publication was called to the attention of the city editor, and he thereupon withdrew the line which included the name of appellee as among those persons indicted by the federal grand jury, and in two following editions of the paper, published in a prominent place, a correction of the mistake, and the correction is in no wise complained of as being insufficient or inadequate.

In behalf of appellant, it is conceded that the publication was libelous, and no complaint is made on this appeal of the verdict and judgment for the actual damages.

[1] The liberty of the press, on the one hand, and the rights of private citizens to be secure in their property and good name, on the other hand, have been carefully correlated and protected by constitutional and legislative provisions. Generally speaking, a publisher of a newspaper may, when done in good faith and without intent to injure, print and circulate any item, whether true or false, that he may think acceptable to his readers without pecuniary or criminal liability, other than may arise from loss of confidence and esteem in the minds of the reading public. He is responsible, however, for an abuse of

that privilege. He cannot, in all cases, with impunity, publish that which in law can be classed as a libel. For the publication of a libel, he may, in certain cases, be punished as for crime. See Penal Code, tit. 16, c. 1. In other cases he must respond in damages to the injured party.

[2] A libel is thus defined in our Civil Code (Rev. St. 1911):

Art. 5595. "A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings, tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule or financial injury or to impeach the honesty, integrity, or virtue, or reputation of any one, or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury."

Article 5597, so far as pertinent in this case, thus reads:

"The publication of the following matters by any newspaper or periodical, as defined in article 5595, shall be deemed privileged, and shall not be made the basis of any action for libel without proof of actual malice:

"(1) A fair, true and impartial account of the proceedings in a court of justice, unless the court prohibits the publication of the same, when in the judgment of the court the ends of justice demand that the same should not be published, and the court so orders; or any other official proceedings authorized by law in the administration of the laws."

It was not true, as published, that Dr. Littlepage had been indicted for the violation of the Harrison Anti-Narcotic Act, and it is apparent that the statement constitutes a libel within the meaning of article 5595, quoted above. The statement being false, it is also true that its publication cannot be defended on the ground that it was privileged matter subject to no liability within the meaning of article 5597, also quoted in part. It therefore follows that appellant is liable in this case to respond to appellee to the extent of his actual damages at least, however innocent may have been the mistake by reason of which the publication of the defamatory statement arose. Indeed, it is so admitted, and, as already stated, appellant in no way questions the verdict and judgment below in this particular.

[3-5] But do the circumstances warrant the imposition of exemplary or punitive damages or even require the submission of that issue to the jury? We have concluded that these questions should be answered in the negative. Punitive or exemplary damages are awarded in the way of a punishment of the wrongdoer and not as a reimbursement of the legal damages to the injured party. When the injured party has been awarded full compensation for his actual injury, then an award beyond this can only be in the nature of a punishment to the wrongdoer. But exemplary damages are allowable only where fraud, malice, gross negligence, or oppression exist. See Texas cases, cited section 63, vol. 2, Texas Digest of Decisions. In this case, there is no pretense that there was any fraud or oppression on the part of either the reporter or of the editors of the Star-Telegram. Nor is it contended that there was any actual malice on their part. Indeed, in appellee's brief the following reference on this subject is made, viz.:

"Appellee in this court admits that appellant was probably not actuated by ill will or personal feeling against him in making the publication complained of. But, as his sole contention is that appellant displayed such an utter disregard for his rights and such little concern for his good name in the publication referred to herein, he will now address himself to a brief collation of the evidence as contained in the statement of facts showing this recklessness and gross carelessness on the part of appellant."

The substance of the testimony collated by appellee, and following the quotation taken from his brief, has, we think, been largely hereinbefore stated. It was to the effect that the reporter did not read the indictment through, but by doing so he could and would have discovered that it was Wallace Wyatt that was indicted instead of Dr. Littlepage; that he did not turn the indictment over to see the name of the defendant printed on its back, although he knew that the defendant's were always so printed. It is undoubtedly true, as is insisted in behalf of appellee, that malice may be inferred from the mere publication of a libelous and defamatory statement; but the malice thus imputed as a matter of law to the mere publication of a libelous article without explanation or excuse, unless perhaps in extreme cause, is that deemed sufficient to support a verdict and judgment for the actual damages to the injured party. The malice, meant and required, however, as a basis for punitive or exemplary damages, must be actual and not merely imputed. It is true that this actual malice may be inferred from and proven by circumstances showing an utter disregard of the rights of another, an indifference to the infliction of injury, or gross negligence. But the inference of malice arising from such circumstances is one of fact and not of law, and, as it seems to us, the circumstances under review do not warrant an inference of actual malice on the part of either the reporter or of either of the editors of the Star-Telegram in making the publication under consideration. The mistake of the reporter was clearly not intentional and under the circumstances quite natural. The matter as a whole was of federal proceedings and apparently altogether privileged matter under the statute, and nothing on the face of the report or in the character of the reporter suggested that verification was necessary. Under such

circumstances, we cannot think that such gross negligence or utter indifference to the rights of others had been shown as to amount to express or actual malice.

Appellee relies largely upon the case of Houston Chronicle Publishing Co. v. Quinn, 184 S. W. 669, by the Court of Civil Appeals of Beaumont, in support of its contention that the circumstances of the case show such an utter want of care and gross negligence as to justify the submission of the issue of exemplary damages. The case is quite lengthy, and we will not undertake to quote therefrom, but think it sufficient to say that it will be found upon examination to be a case where the Houston Chronicle published a communication from the sons of a Mr. O'Fiel, who had been killed, which amounted to a charge that the killer, Quinn, had been guilty of assassination. It was admitted that the charge was false, and it was further shown that, not only did the paper have a representative and reporter located in Beaumont where the killing occurred, but also that the paper knew at the time of the publication that its reporter at Beaumont, some ten days previous, had sent and there had been printed an altogether different version of the circumstances attending the killing; the previous report thus referred to showing that Quinn did the killing purely in self-defense. Under such circumstances, the Beaumont court held that the inference of actual malice was sufficiently supported. But we think it apparent that the case before us is easily distinguishable from the Quinn Case. We think the present case more clearly corresponds to the case of Houston Chronicle Publishing Co. v. McDavid, 173 S. W. 467, by the Court of Civil Appeals at Austin. That was a case in which a libelous statement contained in the pleadings of a divorce suit was published. As delivered to the editor, the item contained the names of the parties concerned, but the editor eliminated the names and only caused the publication of the remainder of the item. The Austin court, in disposing of the issue of exemplary damages, referred to the circumstances and said:

"While it might perhaps support a finding of slight negligence, it falls short of showing gross negligence or gross indifference to the rights of others. On the contrary, the proof shows that the managing editor, before authorizing the publication, attempted to make such changes in it as would prevent identification of any persons therein referred to. This effort, although it may not have been successful, shows clearly that the managing editor was not guilty of gross indifference or willful or wanton wrong. * * * A willful or wanton act or gross indifference, as used in the definition of malice, means an act done with the specific intention to injure the person that was injured, or an act done with such utter recklessness as to indicate a disregard of consequences."

The court accordingly concluded that the testimony did not support a finding of actual or express malice and therefore refused to approve the judgment for exemplary damages.

[6] There is yet another reason, not mentioned in the briefs of counsel, because of which we think the court erred in submitting as against appellant the issue of exemplary damages. The appellee alleged in his petition that the appellant company was "a private corporation, duly incorporated under the laws of the state of Texas." The malice with which it was alleged the publication was made is the malice of the defendant corporation. Neither the reporter, city editor, or other individual was sued or named as an actor in the malice; nor was it alleged that the malice of the reporter, if any, or of the city editor, if any, who caused the objectionable publication, had, with knowledge thereof, been approved or ratified by the defendant corporation. Nor was it alleged that the appellant corporation had been in anywise negligent in the selection of its reporter or of its city editor or managing editor, and wholly failed to set forth the duties or authority of these persons. Nor, when we go to the evidence, do we find proof of any such facts. Under such circumstances, we think it quite clear, under the authorities, that the appellant corporation, which alone was sued, cannot be held for exemplary damages. It is true it was held, and properly held, liable for the actual damages done appellee, for the act of the reporter and of the city editor were acts of the servants of the corporation while acting within the scope of their duty, and for which the corporation, like an individual, is undoubtedly liable; but the corporation itself, having no mind and being an entity only by a fiction of law, must be held to be incapable of entertaining actual or express malice.

We do not wish to be understood as holding that under no set of circumstances can a corporation be held liable for exemplary damages; what we mean to say is it can be so held only in these cases where the agent who acted with express malice is alleged and shown to be something more than a mere servant, in other words, an alter ego of the corporation, or when the malicious act of the servant is alleged and shown to have been adopted or ratified by the corporation after knowledge of the malice. We take the following apt quotation from I. & G. N. Ry. Co. v. Garcia, 70 Tex. 208, 7 S. W. 804:

"Exemplary damages are given as punishment for fraud, malice, gross negligence, or oppression. In the absence of all of these grounds such recovery cannot be legally had. When exemplary damages are claimed, the petition should allege the acts and circumstances constituting the fraud, malice, gross negligence, or oppression upon which such claim is predicated, and if there is any evidence to support it the court should instruct the jury as to the law applicable to such claim. The petition contains no allegation of any act, or circumstance, indicating either fraud, malice, gross

negligence or oppression on the part of appellant. The court gave the jury no instruction as to the law by which they must be governed, in awarding such damages, nor was it necessary to do so as there was no allegation nor evidence to support such claim.

"Corporations may be guilty of such acts and conduct as will subject them to exemplary damages, but no more than individuals can they be punished for the malicious acts of their agents and employés. To make the master liable in any case, to exemplary damages for the fraud, malice, gross negligence or oppression of the servant, it should be alleged and proved, that the acts of the servant which constitute the fraud, malice, gross negligence or oppression, were committed by direction of the master, or that the master has ratified and adopted such acts as his own, or that the master has been guilty of negligence in the selection and employment of the servant whose acts constitute the fraud, malice, gross negligence or oppression complained of."

See, also, Western Union Telegraph Co. v. Schoonmaker, 181 S. W. 263; Hamlett v. Coates, 182 S. W. 1144.

The case of Hays v. H. G. N. Ry. Co., 46 Tex. 272, was one in which the railway company was sued because of a wrongful ejection of plaintiff Hays from a passenger train. It was claimed that the act of the conductor in expelling him was wrongful and accomplished in a rude and insulting manner, and by personal violence, resulting in injuries to his clothing and bruises to his person, and was further aggravated by being done in the presence of, and to the great terror of plaintiff's wife and children. The court held in effect that the company was not liable for exemplary damages in the absence of a showing that the act of the conductor was directed by some controlling officer, or that any controlling officer of the company had been guilty of any fraud, malice, gross negligence, or oppression. Among other authorities, the court cited with approval the case of Detroit Daily Post Co. v. McArthur, 16 Mich. 447, in which it was said:

"There is no doubt of the duty of every publisher to see at all hazards that no libel appears in his paper. Every publisher is, therefore, liable, not only for the estimated damages to credit and reputation, and such special damages as may appear, but also for such damages on account of injured feeling, as must unavoidably be inferred from such a libel, published in a paper of such a position and circulation. But no further damages than these should be given, if he has taken such precautions as he reasonably could to prevent such an abuse of his columns. When it appears that the mischief has been done in spite of precautions, he ought to have all the allowance in his favor which such carefulness would justify, in mitigation of that portion of the damages which is awarded on account of injured feelings. The employment of competent editors, the supervision by proper persons of all that is to be inserted, and the * * * habitual enforcement of such rules as would probably exclude improper items, would reduce the blameworthiness of a publisher to a minimum, for any libel inserted without his privity or approval, and should confine his liability to such damages as include no redress for wounded feeling, beyond what is inevitable from the nature of the libel. And no amount of express malice in his employés should aggravate damages against him when he has thus purged himself from active blame. If, on the other hand, it should appear from the frequent recurrence of similar libels, or from other proof tending to show a want of solicitude for the proper conduct of his paper, that the publisher was reckless of consequences, then he would be liable to increased damages, simply because by his own fault he had deserved them."

To conclude this branch of the subject, and in view of the state of plaintiff's pleading, already referred to, and inasmuch as there is no proof of any express or actual malice, or fraud, or gross negligence, or oppression on the part of any one alleged and shown to be a controlling officer of the appellant company, and inasmuch as there appears to have been no ratification of the mistaken act of the reporter, Henry, but on the contrary, an immediate correction thereof, we are of the opinion that appellant's assignment complaining of such issue of exemplary damages must be sustained.

Other assignments are presented but they relate exclusively to the charge and other proceedings which affect only the issue of actual damage, and, as appellee's right to actual damage is not questioned, we need not consider those assignments.

It will therefore be ordered that the judgment below be reversed, and the cause remanded, unless appellee should within 20 days file a remittitur of the exemplary damages awarded to him, in which event the judgment will be affirmed for the actual damages, with costs of the appeal taxed against appellee.