**LEDISCO FINANCIAL SERVICES, INC., Appellant,**

v.

**Langdon A. VIRACOLA, Appellee.**

**No. 8341.**

Court of Civil Appeals of Texas, Texarkana.

Feb. 24, 1976.

Lewis R. Sifford, Anderson, Henley, Sheilds, Bradford, Pritchard & Miller, Dallas, for appellant.

J. C. B. Aler, Weinberg, Sandoloski & McManus, Dallas, for appellee.

CORNELIUS, Justice.

Based upon Tex.Rev.Civ.Stat.Ann. art. 5069, 11.01–11.11 Langdon A. Viracola filed suit against Ledisco Financial Services, Inc. and Carte Blanche, Inc. to recover damages for unreasonable collection efforts. The jury exonerated Carte Blanche, Inc. but awarded damages against Ledisco. The award was based upon findings that Ledisco, through Harry J. Joy, made harassing telephone calls to Viracola as prohibited by Sec. 11.03(b) of the statutes, and that Joy assaulted Viracola. Damages were in the sum of $7,500.00 for the harassing telephone calls and $1.00 for the physical assault. Exemplary damages of $10,000.00 and attorney's fees were also awarded.

Viracola's evidence was generally as follows: During the course of several disputes with Carte Blanche relative to amounts Viracola owed, his credit card was cancelled, then reinstated, and cancelled again. Carte Blanche then engaged Ledisco to contact Viracola in Dallas for the purpose of retrieving the cancelled credit card. Harry J. Joy, an employee of Ledisco, went to Viracola's home and requested the return of the credit card. In a confrontation which ensued, Joy became aggressive and attempted to force his way into Viracola's house. When Viracola resisted, Joy hit him in the chest with a metal clip board. Viracola then pushed Joy off the porch and onto the grass and ordered him to leave. On several later occasions, some in the daytime and some at night, Joy telephoned Viracola's house refusing to identify himself and made threats and used obscene language both to Viracola and to one of his children. To the contrary, Ledisco's evidence was that Viracola was responsible for turning Joy's visit into a physical confrontation and that he, Viracola, committed an assault upon Joy. Joy and the officers of Ledisco all testified that none of them made any telephone calls to Viracola or to his home. An attempt was made to prove that Viracola had committed assaults on some of his neighbors, raising an inference that those persons rather than Joy made the telephone calls to Viracola, but that evidence was excluded by the trial court. Ledisco's officers testified that Joy was not authorized to use any force or pressure tactics whatsoever but was only authorized to ask for the card, and if it was refused to leave without further comment.

Ledisco has assigned seventy points of error, which for the purposes of brevity and better understanding, are grouped into categories for discussion.

I.

Articles 5069–11.01 et seq.[1] create a right of action in favor of a consumer who has suffered from the actions prohibited by

---

1. Art. 5069–11.02.

   "No debt collector may collect or attempt to collect any debt alleged to be due and owing by any threats, coercion, or attempts to coerce which employ any of the following practices:

those statutes. Ledisco's first group of points complains that there was no evidence and no jury finding that Viracola was a "consumer". These points will be overruled. The statutes define "consumer" as an individual who owes or allegedly owes a debt created for personal, family, or household purposes. "Debt" is defined as any obligation arising out of a consumer transaction. A "consumer transaction" is a transaction in which one or more of the parties is a consumer. The undisputed evidence showed that Viracola used his Carte Blanche credit card for personal purposes and owed money to Carte Blanche, Inc. He also owed the obligation to return the credit card when it was cancelled. Both of these obligations were part of the consumer transaction between Viracola and Carte Blanche. Ledisco was engaged by Carte Blanche to enforce one of these obligations. Thus, according to the undisputed evidence, Viracola was a consumer within the intent of the statutes, and it was not necessary that an issue be submitted on that question.

## II.

■ The statutory remedies are made available when certain acts are committed "in connection with the collection of or attempt to collect any debt." Ledisco's second and third groups of points complain because there was no evidence or jury find-

> (a) using or threatening to use violence or other criminal means to cause harm to the person or property of any person;

> (h) threatening to take any action prohibited by law."

Art. 5069–11.03.

"In connection with the collection of or attempt to collect any debt alleged to be due and owing by a consumer, no debt collector may oppress, harass, or abuse any person by methods which employ the following practices:

> (a) using profane or obscene language or language that is intended to unreasonably abuse the hearer or reader;

> (b) placing telephone calls without disclosure of the name of the individual making the call, and with the willful intent to annoy or harass or threaten any person at the called number;

ing that Ledisco was a debt collector or was ever engaged in an attempt to collect a debt. The basis of this argument is that Ledisco was only attempting to retrieve Viracola's credit card and was not authorized to collect any money and made no attempt to do so. The statutes define "debt collection" as "any action, conduct or practice . . . in collecting debts owed or due, . . . .". As heretofore noticed, "debt" is defined as *any obligation* arising out of a consumer transaction. Under this broad definition, Viracola's obligation to return the credit card upon cancellation would itself be a debt. Such a construction would not do violence to the generally accepted meaning of the word. See cases collected in 11 Words & Phrases, "Debt" at pages 394, 395. Moreover, the attempts of Ledisco to retrieve the card appear to have been so intimately connected to the entire consumer transaction as to be properly considered an integral part of the debt collection process within the meaning of the statutes. To hold otherwise would enable finance companies to remove an essential part of their debt collection activities from the regulation of the statutes by separating them and assigning them to others, thus defeating the overall purpose of the act. As Ledisco's activities in this regard were undisputed, there was no need to submit an issue thereon.

> (d) causing a telephone to ring repeatedly or continuously or making repeated and continuous telephone calls, with the willful intent to harass any person at the called number."

Art. 5069–11.10.

"Any person may seek injunctive relief to prevent or restrain a violation of this Act and any person may maintain an action for actual damages sustained as a result of a violation of this Act. A person who successfully maintains such action shall be awarded attorneys' fees reasonable in relation to the amount of work expended and costs."

### III.

The next group of points concerns scope of employment. It is urged there was no pleading, no jury finding, and no evidence or insufficient evidence that Harry Joy acted in the scope of his employment for Ledisco when the acts occurred. Viracola's petition simply alleged that Ledisco perpetrated the improper acts. Where the principal is sued for a tort committed by an agent, it is sufficient to allege that it was committed by the principal. 2 Tex.Jur.2d, Agency, Sec. 218, p. 674; *Freeman v. Texas Bread Co.*, 111 S.W.2d 307 (Tex.Civ.App. Galveston 1937, no writ). The pleadings were therefore sufficient. The questions whether an issue was required on scope of employment and whether there was evidence of such scope of employment present more difficulty. No issue on scope of employment was required in connection with the clip board incident because the undisputed evidence showed that Joy was in the scope of his employment with Ledisco when he went to Viracola's home to get the credit card. As to the telephone calls, scope of employment was not submitted as such, but the jury was asked by issue No. 4: "Do you find from a preponderance of the evidence that . . . Ledisco Financial Services, Inc. placed telephone calls *through its employee, Harry J. Joy,* without disclosure of the name of the individual making the call and with the willful intent to annoy or harass or threaten any person at the . . residence of the plaintiff . . .?". Ledisco, a corporation, could act "through" Joy only (1) if the acts were done while he was acting within the scope of his employment, or (2) if he was an agent who represented the corporation in such a way that his acts could be regarded as the acts of the corporation itself as distinguished from those of a mere servant. Standing alone, an issue inquiring if Ledisco acted "through Joy" allowed the jury to assume, without finding, that one of these essential facts existed. Under the recent amendment to Tex.R. Civ.P. 277, this omission could have been supplied by an explanatory instruction, but Ledisco requested no such instruction. See Tex.R.Civ.P. 279. Nevertheless, we have concluded there was no evidence to support issue No. 4. It is without dispute that Joy was merely an employee of Ledisco and was not an agent with responsibilities which would render his acts the acts of the corporation itself. The calls were placed when Joy's duty—that of attempting to retrieve the credit card—had been fulfilled. There was no evidence that the officers of Ledisco knew of, authorized, or ratified such calls. Viracola testified fully to the telephone conversations. There was no mention in them of the credit card or any debt or obligation on Viracola's part, either to Carte Blanche or to Ledisco. The calls exerted no pressure, expressed or implied, upon Viracola to return the card or to pay any debt. The sole content of the calls was that of abuse and threats of a personal nature by Joy against Viracola. In the absence of any words, conduct, or other circumstances indicating that the calls were for the purpose of inducing Viracola to return the credit card, the only reasonable inference supported by evidence is that such calls were motivated by Joy's personal anger and desire to retaliate because of his treatment by Viracola. Since they had nothing to do with Ledisco's business—the retrieval of the credit card—they are insufficient to raise an inference that they were made in furtherance of Ledisco's business.

### IV.

Ledisco asserts there should have been an issue and a jury finding on whether the acts committed by Joy were a proximate cause of Viracola's injuries and damages. Proximate cause was not submitted as such, but the jury was asked if Viracola sustained any actual damage "as a result" of the telephone calls, and if he was injured "as a result" of the clip board incident. These issues were framed in the express language of Section 11.10 which provides

that any person " . . . may maintain an action for actual damages sustained as a result of a violation of this Act." We believe a submission such as given here is sufficient in this kind of case. It was undisputed that the acts caused the claimed injury. In addition, the acts were willful and intentional rather than negligent, and it is presumed that a person who acts willfully foresees and intends the consequences of his acts. *Magnolia Petroleum Co. v. Beck*, 41 S.W.2d 488 (Tex.Civ.App. Fort Worth 1931, writ dism'd). Therefore, the essential elements of proximate cause—cause in fact and foreseeability—were both present.

## V.

Ledisco next complains of the award of actual damages, claiming there were no pleadings of damages, no definition of the term or the elements thereof, and that the award is not supported by evidence and is excessive. We have examined the record and find the points concerning the pleadings and the excessive nature of the award to be without merit. We agree that the jury should have been instructed on the proper elements it could consider in awarding actual damages. 17 Tex.Jur.2d, Damages, Sec. 285 p. 345–46; Sec. 299, p. 367. Ledisco, however, did not submit a definition or explanatory instruction as required by Tex.R.Civ.P. 279. Consequently, the omission does not constitute reversible error. *Texas Employers' Ins. Ass'n v. Mallard,* 143 Tex. 77, 182 S.W.2d 1000 (1944); *Dodson Brothers, Builders v. Adkins,* 275 S.W.2d 143 (Tex.Civ.App. El Paso 1954, no writ); *Wenski v. Kabitzke,* 257 S.W.2d 153 (Tex.Civ.App. Austin 1953, no writ). It is urged that the actual damage award was not supported by evidence because damages for mental anguish cannot be recovered unless there is also physical illness or injury. As to common law torts, that has been the general rule in Texas for many years. But we are dealing with a new statutory tort where the statutes expressly give a right of action for oppression, harassment or abuse resulting from certain prohibited practices. Moreover, the decisions now recognize a right of action for mental anguish alone when the injury is essentially mental and subjective or where the injury is an unpermitted and intentional invasion of a personal right. *Billings v. Atkinson,* 489 S.W.2d 858 (Tex.1973); *Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627 (Tex.1967).

## VI.

Exemplary damages in the sum of $10,000.00 were awarded upon a finding that Ledisco acted with malice in making the telephone calls inquired about in special issue No. 4. A group of points has been assigned asserting these damages were not justified by the evidence and were excessive. Exemplary damages may be awarded when a tort is committed with malice. The right to such an award is one of general application recognized by the common law and is not dependent upon statute. *Briggs v. Rodriguez,* 236 S.W.2d 510 (Tex.Civ.App. San Antonio 1951, writ ref'd n. r. e.). But a corporation can be held liable in exemplary damages only when it is shown that (1) the agent who acted with malice is something more than a mere servant; in other words, an agent who represents the corporation in such a manner that his acts are regarded as the acts of the corporation itself, or (2) the malicious act of a servant was previously authorized or subsequently adopted or ratified by the corporation, or (3) the corporation could reasonably have anticipated that what it knew the servant would do would likely cause him to maliciously do some other wrong. *Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397 (1934); *Fort Worth Hotel Co. v. Waggoman,* 126 S.W.2d 578 (Tex.Civ.App. Fort Worth 1939, writ dism'd jdgmt cor.); *Wortham-Carter Pub. Co. v. Littlepage,* 223 S.W. 1043 (Tex. Civ.App. Fort Worth 1920, no writ); *Equitable Life Assur. Society of United States*

*v. Lester*, 110 S.W. 499 (Tex.Civ.App. 1908, no writ); 17 Tex.Jur.2d, Damages, Sec. 173 p. 239. The record here is devoid of evidence indicating that any of these essential facts was present. Exemplary damages were therefore not warranted.

## VII.

■■■ The next group of points complains of the award of attorney's fees because they were not pleaded, were not supported by evidence, and were not separated between Ledisco and Carte Blanche. The complaint regarding pleadings is based on the fact that attorney's fees were awarded to cover appeals in this court and in the Supreme Court and there was no specific pleading for fees in those courts. The petition of Viracola prayed for "reasonable attorney's fees". Such a general plea is sufficient to authorize an award of fees in the higher courts. *Wolfe v. Speed Fab-Crete Corporation International*, 507 S.W.2d 276 (Tex.Civ.App. Forth Worth 1974, no writ). The complaint as to lack of evidence to support the award is without merit. Severability is not material since Carte Blanche was exonerated, leaving Ledisco as the only party liable under the statutes.

## VIII.

■■■ Ledisco next urges that the trial court erred in excluding certain evidence it offered against Viracola. The evidence was that of an alleged felony assault conviction against Viracola, altercations which he allegedly had with one or more of his neighbors, and an out of court admission he allegedly made. Complaint is also made that the trial court refused to allow Ledisco to perfect its bills of exceptions to the exclusion of these items of proof.

The record of the alleged felony conviction would have been admissible if it involved moral turpitude and was not too remote. 1 C. McCormick & R. Ray, Texas

Evidence, Sec. 660 p. 508 (2d ed. 1956); Sec. 662 p. 509. *Texas Employers' Insurance Association v. Curry*, 290 S.W.2d 767 (Tex. Civ.App. El Paso 1956, writ ref'd n. r. e.). But we are unable to find, and Ledisco has not directed us to, any place in the statement of facts where an offer was made to make such proof. In the absence of a tender, no error is shown. Ledisco should have been permitted to cross-examine Viracola about assaults he allegedly had made on some of his neighbors. Although great caution should be observed in admitting evidence of collateral or extraneous acts which would tend to create prejudice against a party, it should be allowed when it would tend either directly or by inference to establish or negate a principal fact in issue. *Pittman v. Baladez*, 158 Tex. 372, 312 S.W.2d 210 (1958); *Dallas Railway & Terminal Company v. Oehler*, 156 Tex. 488, 296 S.W.2d 757 (1956); *Interstate Forwarding Co. v. McCabe*, 285 S.W. 920 (Tex.Civ. App. El Paso 1926, writ dism'd); 23 Tex. Jur.2d, Evidence, Sec. 126 p. 184. A principal fact in issue here was the identity of the party who made the telephone calls. Viracola testified that he recognized the caller's voice and that it was Joy. Joy denied that he ever made any calls to Viracola's home. The purpose of showing that Viracola had been involved in assaults or affrays with his neighbors was to show that those parties rather than Joy may have made the calls. Evidence of such altercations, coupled with Joy's testimony that he never called Viracola, could raise an inference that other persons who had been offended by Viracola made the calls rather than Joy. It should have been admitted for that purpose, under proper instructions of the court, for the jury to consider. There is no bill of exceptions showing what this cross-examination would have elicited, but the rule requiring that the proffered evidence be incorporated in a bill of exceptions does not apply to cross-examination of an adverse witness. *Cunningham v. Austin & N. W. R. Co.*, 88 Tex. 534, 31 S.W. 629 (1895); *Beckham Development Co. v. Bruce Clark & Associates,*

492 S.W.2d 287 (Tex.Civ.App. Dallas 1973, no writ). There was an attempt to introduce evidence by cross-examination of Viracola and by direct examination of the witness Sweet, that during a recess of the trial Viracola, in the presence of Sweet, made an admission against interest concerning the genuineness of his claims in the suit. Unless it is privileged, any statement made by a party which is inconsistent with the position he takes at the trial is admissible as an admission against interest. 1 C. McCormick & R. Ray, Texas Evidence, Sec. 1141 p. 29 (2d ed. 1956). Because his attorney was present when the alleged admission was made Viracola claimed it was privileged, but the privilege does not obtain when the statement is made in the presence of a third person. 1 C. McCormick & R. Ray, Texas Evidence, Sec. 485 p. 406 (2d ed. 1956). The alleged admission should have been allowed. When it was excluded, Ledisco requested permission to elicit the testimony for its bill of exceptions but was not allowed to do so. It is reversible error to refuse a party the right to perfect his bill of exceptions. *Dorn v. Cartwright,* 392 S.W.2d 181 (Tex.Civ.App. Dallas 1965, writ ref'd n. r. e.). However, although a bill of exceptions may be completed by having the witness testify out of the presence of the jury, and having that testimony incorporated in the statement of facts or the bill, it is also a customary practice to show what the excluded testimony would have been by stating to the court what is expected to be proved by the witness and having the bill show that such was done. *Gray v. Mills,* 206 S.W.2d 278 (Tex. Civ.App. Fort Worth 1947), aff'd, 147 Tex.

33, 210 S.W.2d 985 (1948). Considered in the light of the testimony, the questions put to the witnesses, the objections and statements of counsel, and the remarks of the trial judge, the record here is sufficient to apprise both the trial court and this court of the nature of the evidence which was expected to be and would have been proved had it been allowed. See *Gray v. Mills,* supra; *Hartfield v. Greber,* 160 S.W. 603 (Tex.Civ.App. El Paso 1912), aff'd, 207 S.W. 85 (Tex.Com.App. 1918, jdgmt adopted).

## IX.

Ledisco contends that on three occasions the question of insurance coverage was injected into the trial. We find these points to be without merit, and since it is unlikely that these matters will arise on a new trial it is not necessary that we discuss them. Certain errors asserted in the points concerning agency have already been dealt with in the portions of this opinion pertaining to scope of employment and exemplary damages.

## X.

The errors noted require that the judgment be reversed. Because the various aspects of the case are so intimately connected, and the excluded evidence would seem to bear upon the liability as well as the damage issues, we conclude that the cause should be remanded, in the interest of justice, for a new trial.

It is so ordered.